### JQHN FITCH, APPELLANT, *v.* EDWARD CREIGHTON.

The statutes of Ohio give to the local authorities of cities and incorporated villages power to make various improvements in streets, &c., and to assess the proportionate expense thereof upon the lots fronting thereon, which is declared to be a lien upon the property.

The City Council of Toledo directed certain improvements to be made, and contracted with two persons (one of whom purchased the right of the other) to do the work, and authorized them to collect the amounts due upon the assessments.

The contractor who executed the work, and who was a citizen of another State, filed a bill upon the equity side of the Circuit Court to enforce this lien.

The court had jurisdiction of the case.

The courts of the United States have jurisdiction at common law and in chancery; and wherever such jurisdiction may be appropriately exercised, there being no objection to the citizenship of the parties, the courts of the United States have jurisdiction. This is not derived from the power of the State, but from the laws of the United States.

It was not necessary to make the contractor who had sold out a party, nor was the bill multifarious because it claimed to enforce the liens upon several lots.

THIS was an appeal from the Circuit Court of the United States for the northern district of Ohio.

It was a bill filed on the equity side of the court by Creighton, a citizen of Iowa, against Fitch, a citizen of Ohio, under the circumstances stated in the opinion of the court. The Circuit Court decreed against Fitch, who brought up this appeal.

It was submitted on printed arguments by *Mr. Cooke* for the appellant, and *Mr. Swayne* for the appellee.

The principal question in the case was whether the Circuit Court had jurisdiction of the case, which depended upon the facts involved in it. A particular statement of these would not be interesting to the profession generally, and therefore they are omitted. The propositions for which *Mr. Cooke* contended, in support of the demurrer below, were—

I. That the complainant does not show himself possessed of any right which he can enforce directly against this defendant or his property; and—

II. That the liability of the defendant is not such an one as can be enforced against him in a court of equity, without the aid of the statute, which cannot confer jurisdiction upon the courts of the United States.

*Mr. Swayne's* points, in opposition to the above, were thus stated:

I. It seems to be conceded that, when the local statutes of a State give rights to an individual, the courts of the United States will enforce those rights in cases where they have juris-diction of the parties.

1. It is not pretended that the States can direct the remedy by which rights are to be enforced, which the Federal courts are bound to pursue.

2. But it is claimed that where the statute of a State creates a right which may be enforced by remedies already existing and resorted to in the latter courts, that these courts will enforce the right by their own known remedies and usages, in cases where they have jurisdiction, although the local statute may direct a special mode of proceeding.

The General Smith, 4 Wheaton's Rep., 438.

II. By the statute and the contract with the city, the com-plainant acquired, by operation of law, rights which courts of equity, by their long-established rules and usages, will en-force.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States for the northern district of Ohio. The bill was filed by Edward Creighton, a citizen of the State of Iowa, against John Fitch, a citizen of the State of Ohio.

By the act of March 11th, 1853, Swan's Statutes Ohio, it is provided, "that the City Council shall have power to lay off, open, widen, straighten, extend, and establish, to improve, keep in order, and repair, and to light streets, alleys, public grounds, wharves, landing places, and market spaces; to open and construct, and put in order and repair, sewers and drains; to enter upon or take for such of the above purposes as may

require it, land and material; and to assess and collect and charge on the owners of any lots or lands, through or by which a street, alley, or public highway shall pass, for the purpose of defraying the expenses of constructing, improving, and repairing, said street, alley, or public highway, to be in proportion either to the foot front of the lot or land abutting on such street, alley, or highway, or the value of said lot or land as assessed for taxation under the general law of the State, as such municipal corporation may in each case determine."

Each municipal corporation may, either by a general or special law or ordinance, prescribe the mode in which the charge on the respective owners of lots or lands shall be assessed and charged to the owner, which shall be enforced by a proceeding at law or in equity, either in the name of the corporation or of any person to whom it shall be directed to be paid, but the judgment or decree was required to be entered severally; and a charge was required to be enforced for the value of the work or material on such lot or land; and where payment shall have been neglected or refused when required, the corporation shall be entitled to recover the amount assessed, and five per cent. from the time of the assessment. Swan's Stat., 963.

On the 7th of April, 1855, the city of Toledo entered into a contract with Creighton, and one Edward Connelly, who bound themselves to do certain work on the streets, for the sums named in the contract; and that so soon as the work was completed, the street commissioner should give them a certificate to the effect, and on the presentation of the same to the council, it would assess the cost and expenses of the improvement on the lots or lands made liable by law to pay the same, and make out and deliver to the contractors a certified copy of said assessments, and authorize them or assigns to collect the several amounts due and payable for the work and improvement.

Creighton purchased from Connelly his interest in the contract, and went on and performed the work under it, to the acceptance of the city. On the 14th July, 1856, the council made an assessment on the lots abutting on the improvement in Monroe street, to pay the expenses of that work, and di

rected that the owners of the lots make payment of the assess ments to Creighton. Among the rest, lot 640, belonging to John Fitch, was assessed for this work $84.56.

On the 20th May, 1856, the council made an assessment upon the lots abutting on said improvement in Michigan street, to pay for the same, and also directed the owners of these lots to make payments of such assessments to Creighton. Among the lots so assessed were the following, owned by defendant, numbered 547, 538, 539, 544, 1,461; the assessments of the respective lots amounted to the sum of $1,791.76; and subsequently a further assessment was made on the contract of three lots, numbered 686, 751, and 855, which amounted to. the sum of $266.47. The above sums were ordered to be paid to the complainant, with five per centum allowed by law.

To this bill the defendant demurred, which, on argument, was overruled. And the court ordered the above sums to be paid in ten days, or in default thereof that the lots be sold, &c.

From this decree an appeal was taken. On the part of the appellant it is claimed, that upon the facts of the case, the Circuit Court had no jurisdiction; that the equity jurisdiction of the courts of the United States depends upon the principles of general equity, and cannot, therefore, be affected by any local remedy, unless that remedy has been adopted by the courts of the United States.

By the 34th section of the judiciary act of 1789, it is declared, "that the laws of the several States, except where the Constitution, treaties, or statutes of the United States shall require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply." This section does not relate to the practice of our courts, but it constitutes a rule of property on which the courts are bound to act.

The courts of the United States have jurisdiction at common law and in chancery, and wherever such jurisdiction may be appropriately exercised, there being no objection to the citizenship of the parties, the courts of the United States have jurisdiction. This is not derived from the power of the State, but from the laws of the United States.

In Clark *v.* Smith, 13 Peters, 203, the court say "the State Legislatures certainly have no authority to prescribe the forms and modes of proceeding in the courts of the United States; but having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the Federal courts, no reason exists why it should not be pursued in the same form as it is in the State courts."

In the case above cited, the Legislature of Kentucky authorized a person who was in possession of land claimed by him, and some one else had a claim on the same land; the possessor was authorized to file a bill against the claimant to litigate his title and remove the cloud from it.

The statute authorizes a suit at law or in equity, but from the nature of the case it would seem that chancery was the appropriate mode.

There was no necessity to make Connelly a party in this case. He made the contract jointly with Creighton. But before the work was commenced Connelly relinquished his right to Creighton, who performed the whole work, and to whom the City Council promised payment. The assessments, too, were made to Creighton, and he was considered the only contractor with the city. No right was held under Connelly. By the statute the city makes an assessment which is to be paid by the owner personally, and it is also made a lien on the property charged. The charge may be collected and the lien enforced by a proceeding at law or in equity, either in the name of the city or its appointee. The complainant is the appointee for this purpose, and his right is too clear to admit of controversy.

This bill is not multifarious; the assessments were assessed on the lots by the foot front, and all against the same defendant.

Lord Cottenham, in Campbell *v.* Mackay, 7 Simon, 564, and in Mylne *v.* Craig, 603, says, to lay down any rule, applicable universally, or to say what constitutes multifariousness, as an abstract proposition, is, upon the authorities, utterly impossi-

ble. Every case must be governed by its circumstances; and as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject. Whilst parties should not be subjected to expense and inconvenience in litigating matters in which they have no interest, multiplicity of suits should be avoided by uniting in one bill all who have an interest in the principal matter in controversy, though the interests may have arisen under distinct contracts.

We think the statute of the State, and the municipal corporation of Toledo, authorize the assessment of the sums on the lots in question, and that the judgment in the Circuit Court must be affirmed.