J. B. EDWARDS AND OTHERS *vs.* JOHN W. SARTOR AND OTHERS.

D. purchased from W. a tract of land on credit, and gave bond, with J., H. and F. as sureties therein, and a mortgage of the premises to secure the payment of the purchase money. D. became insolvent, and J. and F. agreed with W. to pay the debt, and take from him an assignment of the mortgage as indemnity. F. paid one-half the debt and got possession of the mortgage and the land. J. being unable, with his own means, to pay the other half, made separate agreements, in writing, with C. and S., by which he procured the necessary funds and paid it; the agreements being that, if J. should fail to return the funds loaned him by C. and S., respectively, W., who knew of and assented to the arrangements, should assign to each of them a proportion of the mortgage lien, equal to the amount advanced by him. J. failed to return the funds, and became insolvent: *Held*, That a bill in equity, filed by C., and the administrators of S., who had since died, against D., F., J., and the administrator of W., who had also died, setting forth the facts as herein stated, and praying the benefit of the mortgage lien, a sale of the mortgaged premises, &c., was not demurrable by D., J., and the administrator of W., for multifariousness.

Parties having an interest in common in the subject-matter of a suit in equity may be joined as plaintiffs, though each acquired his interest by a separate and distinct contract.

Upon questions of multifariousness it is impossible to lay down any rule which will apply to all cases. There is more danger of doing injustice from a want than from a redundancy of parties. Every case must depend on its own circumstances, and the Court must exercise a sound discretion upon the subject.

BEFORE THOMAS, J., AT UNION, NOVEMBER TERM, 1869.

Bill in Equity exhibited by J. B. Edwards and F. C. Sanders, administrators of John Sanders, deceased, and C. C. Sartor, plaintiffs, against J. W. Sartor, D. R. Sartor, F. H. Bates, and W. Munro, administrator of W. J. Keenan, deceased, defendants. The bill alleged that, on the 13th December, 1864, D. R. Sartor purchased from W. J. Keenan a tract of land in Union County, (describing it,) at the price of $20,000; that, to secure the payment of the purchase money, he gave to Keenan his bond, with J. W. Sartor, W. H. Sartor, and F. H. Bates as sureties thereon, and a mortgage of the premises; that it was ascertained, shortly afterwards, that D. R. Sartor was insolvent, and thereupon J. W. Sartor and Bates agreed with Keenan to pay him the debt, on his making to them an assignment of the mortgage, as indemnity, to which he readily assented, and which plaintiffs supposed was done, though they have not been allowed to see the mortgage; that Bates paid one-half the bond, and is supposed to be in possession thereof, and of the mortgage and assignment; that John W. Sartor, not having sufficient means of his own to pay the other half, borrowed, on the 6th of Au-

gust, 1866, from John Sanders, twenty bales of cotton, under a written agreement to return the same, "or, failing to do so, that Keenan should assign to Sanders so much of the mortgage aforesaid as would be equal to the twenty bales of cotton ;" and that, on the 22d of the same month and year, he, John W. Sartor, borrowed from the plaintiff, C. C. Sartor, twenty-three other bales of cotton, under an agreement, in writing, "to return the same in twelve months, or, if" the lender "preferred it, to assign to him an amount in the land purchased of W. J. Keenan, equal to the value of said cotton at forty cents per pound ;" that both lots of cotton were loaned to John W. Sartor, to aid him in paying said debt ; that he and Bates did pay the same, and that the agreements aforesaid were made with the knowledge, and at the request, of Keenan; that very soon thereafter he, Keenan, left the State, and died in 1867 ; that J. W. Sartor has failed to return said cotton, or pay for the same, and that he is insolvent, and unable to pay ; that Bates is in possession of the said tract of land; and that D. R. Sartor failed, in 1866, and removed to the West, abandoning the said land. The prayer of the bill was, among other things, that the mortgage be foreclosed, and that the land be sold, and the proceeds applied to satisfy the demands of the plaintiffs.

The bill was taken *pro confesso* against the defendant, Bates ; and the three other defendants, J. W. Sartor, D. R. Sartor and W. Munro, each filed a separate demurrer for multifariousness, and for want of privity between the plaintiffs and himself.

His Honor the Circuit Judge sustained the demurrers, on the ground of multifariousness, and dismissed the bill.

March 12, 1870. The opinion of the Court was delivered by

MOSES, C. J. The bill filed in the Circuit Court for Union was taken *pro confesso* against Farr H. Bates. Daniel R. Sartor, John W. Sartor and William Munro, administrator of Wm. J. Keenan, severally demur: First, for want of privity and conformity of interest between the plaintiffs. Secondly, that the bill is exhibited against the defendants for several distinct and independent matters and causes, which have no relation to each other. The Judge below sustained the demurrer, and dismissed the bill.

It is not to be questioned that, while the Courts of Law strictly enforce the rules of pleading which they have prescribed, Courts of Equity, although they administer relief without so close an adherence to the system of procedure which they have adopted, still re-

quire those seeking their aid to conform to an established practice, which is regarded proper and necessary for the due administration of their principles.

They exhibit, however, less firmness in enforcing their rules than the Courts of Law, allowing convenience and expediency, to a very great extent, to govern their application where too rigid an enforcement would destroy the very purpose they were intended to promote.

In general, these Courts will not permit a claim for distinct matters to be preferred by plaintiffs against one or more defendants, or, in the same cause, the union of several defendants, some of whom are disconnected with a large portion of the claim made by the bill. When this appears, it is obnoxious to the charge of multifariousness. The conflict with the rule must be apparent, on the examination of the bill, or the Court will not regard the objection within the influence of the principle which it enforces by dismissing the cause.

This whole subject was fully, and at length, reviewed by that great master of equity learning, Chancellor Kent, in the case of *Brinkerhoff* vs. *Brown*, 6 John. Ch., 139. After a close examination of all the decisions in point, he has simplified, with so much exactness and precision, the result which they afford, that it only remains to apply his conclusion to the facts as they present themselves in a case. At page 156, he lays down the governing principle in these words: "That a bill against several persons must relate to matters of the same nature, and having a connection with each other, and in which all the defendants are more or less concerned, though their rights in respect of the case may be distinct."

Applying this rule, first to the plaintiff here, who, in the language of the Chief Baron, in *Wood* vs. *The Duke of Northumberland*, Anst., 469, though "unconnected parties may be joined in one suit where there was a common interest centering in the point in issue in the cause," and then to the defendants, and what is the case made by the bill? Daniel R. Sartor, in 1864, purchased a tract of land from Wm. J. Keenan. He gave his bond for the purchase money, with John W. Sartor, W. H. Sartor and Farr H. Bates as sureties, and executed a mortgage, to the vendor, of the premises bought. Soon after the transaction, J. W. Sartor and Farr H. Bates, ascertaining the insolvency of the said D. R. Sartor, agreed with Keenan that they would pay the bond, upon his assigning the mortgage to them. Bates, thereupon, paid up one-

half, procured the assignment, as the plaintiffs aver, and took possession of the land, which he still holds, receiving the rents and profits. John W. Sartor, who agreed to pay his half in cotton, not having enough, borrowed, on August 6th, 1866, of John Sanders, the intestate of the plaintiffs, Edwards and Sanders, certain bales of cotton, agreeing that, if they should not be returned at the time fixed, the said Keenan, by the authority of the said J. W. Sartor, should assign to the said John Sanders an amount of the mortgage equal to the value of the cotton so borrowed. On the 22d day of the same month, a like agreement (except as to quantity) was entered into with the other plaintiff, Christopher C. Sartor. The contracts were not only made with the knowledge and approval of Keenan, but were reduced to writing by him; and to the execution of the last referred to, he was a subscribing witness. He received full payment of the debt from Bates and John W. Sartor, on the condition that he would give them the security which he held through his mortgage, which the plaintiffs suppose he did. Keenan left the State and died. Munro, the defendant, administered on his estate. John W. Sartor did not return the cotton, and is insolvent. Daniel R. Sartor failed, and removed beyond the limits of South Carolina, and the plaintiffs are without remedy, unless the land is subjected to their demands. They pray that Bates may be required to produce the mortgage, that it may be foreclosed, that plaintiffs may be subrogated to the rights of the original mortgagee, and their demands satisfied from the proceeds of the sale of the land.

The mortgage is the subject-matter of the bill, which is brought to establish the rights which the respective plaintiffs have under it. If the representatives of Sanders had filed their bill, claiming the separate interest of their intestate under the mortgage, no final adjudication could have been had, unless the other plaintiff, Christopher C. Sartor, who, also, claimed under the same instrument, had been a party defendant. A complete disposition of the rights of either, under the mortgage, could not have been effected without bringing all the persons interested in it before the Court. If there had been no assignment by Keenan, the surety, Bates, and those who, at the request of the other sureties, paid to him the debt, with a promise of the assignment of the mortgage, could, in equity, have set it up for their benefit. The mortgage enured to the interest of the sureties and those who stood in their place in relation to the original transaction.

It is a general rule in equity "that all persons should be before

the Court whose interests may be affected by the proposed decree, or whose concurrence is necessary to a complete arrangement. It is only requisite that the interests of the plaintiffs are consistent, that all the plaintiffs shall support one side, and all the defendants the other side of the question in issue."—Adams, 312.

The object of a Court of Equity is to do full justice, that future litigation be avoided, and, hence, the expression of *Lord Chancellor Talbott,* in *Knight* vs. *Knight,* 3 P. Wms., 333, "that Courts of Equity, in all cases, delight to do complete justice—and not by halves."

As is said by Chancellor Kent, in the case already referred to, "there is another consideration to show that a demurrer of this kind, should be cautiously received, and that is, the difficulty and the peril attending the selection, by the plaintiffs, of proper parties. The inconvenience, on the whole, is much greater from the want than from the redundancy of parties."

We have said that the rules of the Court of Equity, as to pleadings, are not as inflexible as those of the common law Courts. In *Oliver* vs. *Piatt,* 3 How., 333, it was held, "if entire justice cannot so conveniently be done, against the same defendants, without uniting different subjects, they may be united in a bill."

Mr. Justice McLean, in delivering the opinion of the Court, in *Fitch* vs. *Creighton,* 24 How., 163, remarks : Lord Cottingham, in *Campbell* vs. *Mackey,* 1 Mylne & Craig, 603, said : "To lay down any rule, applicable universally, or to say what constitutes multifariousness, is, upon the authorities, utterly impossible. Every case must depend on its own circumstances, and as these are as diversified as the names of the parties, the Court must exercise a sound discretion on the subject."

The conclusion which we have reached is sustained by *Williams et al.* vs. *Neel et al.,* 10 Rich. Eq., 338 ; *McElwee* vs. *Massey & Foster,* Ibid, 377 ; and *Barkley* vs. *Barkley,* 14 Rich. Eq., 12.

The motion is granted, the order sustaining the demurrer overruled, and the case remanded to the Circuit Court.

*Willard,* A. J., concurred.