## H. B. CLAFLIN CO. v. FURTICK.

(Circuit Court, D. South Carolina. December 4, 1902.)

1. FORECLOSURE OF CHATTEL MORTGAGE—TEMPORARY RECEIVERSHIP—POWER OF COURT.

A federal court of equity has power, on a preliminary application, without notice, in a suit to foreclose a chattel mortgage, to take the mortgaged property into its custody through the marshal or a receiver for the purpose of preserving the status quo, where, in the exercise of its discretion, it deems such action necessary to protect the rights of the parties.

2. SAME—REVIEW OF ORDERS IN SAME COURT.

A federal judge, on the return to a rule on a defendant in a foreclosure suit to show cause why a receiver should not be appointed and an injunction granted, cannot review the action of another judge, sitting in the same court, in appointing a temporary receiver and entering a restraining order pending the hearing on such rule.

8 SAME—PARTIES—MORTGAGE TO TRUSTEE.

Where a chattel mortgage securing a single debt is taken to a third person named as a trustee, he is merely an agent of the creditor, and the latter may maintain a suit to foreclose in his own name.

4. SAME—JURISDICTION IN EQUITY—STATUTORY REMEDY.

A federal court of equity is not without jurisdiction of a suit to foreclose a chattel mortgage because the mortgagee had the right under the state statute to take possession of and sell the property on condition broken.

5. SAME—APPOINTMENT OF RECEIVER—GROUNDS.

A chattel mortgage on a stock of goods gave the mortgagee the right of possession through a cashier, to be appointed by the trustee to whom the mortgage was executed, who was to receive the proceeds of all sales, and, after deducting sufficient to pay current expenses, to apply the remainder on the mortgage debt. The mortgagor made a tender of the amount he claimed to be due on the mortgage, and on its refusal discharged the cashier and took possession of the stock. By operation of law also the mortgagee was entitled to possession on a breach of the conditions of the mortgage. *Held*, that under such facts the court would appoint a receiver in a suit to foreclose the mortgage to take possession of and hold the property pending a determination of the questions at issue, where the amount due on the mortgage, the value of the stock, and the solvency of the defendant were all matters in dispute.

In Equity. Suit to foreclose chattel mortgage. On application for appointment of a receiver and for an injunction.

Allen J. Green, for complainant.

Wm. H. Lyles and W. D. Mayfield, for defendant.

SIMONTON, Circuit Judge. This case now comes up on the return to a rule to show cause why a receiver be not appointed, and why the temporary injunction heretofore issued be not made permanent. In order to understand the case, a brief statement is necessary. William F. Furtick is a citizen of South Carolina, a merchant resident and doing business in the city of Columbia. Having become embarrassed, he employed Messrs. P. H. Nelson and W. D. Melton, attorneys, and instructed them to visit New York, and open negotiations with his creditors. These gentlemen visited New York, and finally consummated an arrangement with the H. B. Claflin Company, the

chief creditor of Furtick, whereby they obtained an amount of cash sufficient to purchase the claims of the other creditors, and secured a promise from that company to let Furtick have goods from time to time to a sum not exceeding $5,000, so that he could continue in business. With the money so provided by the H. B. Claflin Company, these gentlemen purchased the other outstanding claims against Furtick on such terms as could be had with each separate creditor, the discounts varying in almost every instance. Upon reporting to Furtick the result of their effort and the contract made with the H. B. Claflin Company, their action was entirely approved by him. As a part of the arrangement with the H. B. Claflin Company, and to secure it in full, Furtick executed a mortgage of his stock of goods, furniture, and fixtures. This mortgage, at the request of the Claflin Company, was executed to W. D. Melton, Esq., styled their "trustee." This mortgage recites that Furtick is indebted to W. D. Melton, trustee, for merchandise sold and delivered and moneys loaned to him at divers times and in various sums, amounting in the aggregate approximately to the sum of $23,000, and that he (Furtick) may become further indebted to the said Melton, trustee, at divers times thereafter in various sums, amounting in the aggregate to not more than $5,000, with interest on all invoices of merchandise and on all sums of money from the time when same are payable. Now, to secure the same he mortgaged all his stock of merchandise, office and store furniture and fixtures in his establishment at Columbia, and all such merchandise, office and store furniture and fixtures as may from time to time hereafter be acquired in lieu and place of those above mentioned in the current business of said establishment. Among the covenants of the mortgage was this: That, after deducting from the daily sales, the current expenses, and a reasonable sum for the personal expenses of the mortgagor, the remainder of all such sales shall be paid over to William D. Melton, trustee, on account of the indebtedness secured by the mortgage, and to this end W. D. Melton shall appoint a cashier, selected by himself, to receive all cash receipts, and, after making the deductions provided as aforesaid, to pay the remainder to Melton, trustee. The mortgage provides that the indebtedness is to be paid within six months from its date, and in default of that, or on breach of any covenant in the mortgage, that Melton can enter, etc., as in the usual form of mortgages. This mortgage was duly executed and recorded, and the scheme put in operation. It continued for some time, some modifications being introduced, not material now to be mentioned, until October 17, 1902, when Furtick tendered to W. D. Melton, trustee, the sum of $789.12, as payment in full of his entire indebtedness under the mortgage, after allowing him credit for sums paid from time to time, and demanded a receipt in full. This tender Mr. Melton declined. Thereupon Furtick dismissed the cashier, no longer accounted for the sales, and conducted the business on his own account entirely; whereupon the H. B. Claflin Company filed its bill for foreclosure against Furtick, praying also for the appointment of a receiver and an injunction. Upon presentation of the verified bill of complaint, his honor the district judge, presiding in the circuit court, passed an order di-

recting the marshal forthwith to take possession of the property described in the bill and the proceeds thereof, and to hold the same until the further order of the court; that defendant do show cause on a day fixed why the prayer of the bill be not granted, and a receiver appointed, and the injunction issued; that defendant be restrained from intermeddling with the mortgaged property, or in any way changing the status thereof or of its proceeds, until the further order of the court,—issuing the ordinary restraining order in the meantime. The defendant is also ordered to deliver the property to the marshal, and is given leave to move to vacate or modify the order on two days' notice. Subsequently, by stipulation between counsel, the defendant was authorized to conduct the business, reporting daily under oath the amount of the sales, and depositing the same, after deducting clerk hire, to the credit of the marshal, in a bank in Columbia.

The defendant has made his return, as follows:

1. He denies the jurisdiction of the court upon a preliminary application, without notice, to order the marshal to take possession of property in the possession of defendant and of the proceeds thereof, and to order the defendant to turn over the said property to said marshal. Having obeyed this order, he asks that it be rescinded. Perhaps no practice is better established in courts of equity than that of taking into the custody of the court property the subject-matter of litigation, and preserving the status quo by holding it for the benefit of all parties. And this practice is frequently exercised in cases of foreclosure of mortgages even where provision is not made, as is made in this case, that the net profits of the mortgaged property belong to the mortgagee. Kountze v. Hotel Co., 107 U. S. 378, 2 Sup. Ct. 911, 27 L. Ed. 609; Shepherd v. Pepper, 133 U. S. 626, 10 Sup. Ct. 438, 33 L. Ed. 706; American Nat. Bank v. Northwestern Mut. Life Ins. Co., 32 C. C. A. 275, 89 Fed. 612; Central Trust Co. v. Chattanooga, R. & C. R. Co., 32 C. C. A. 241, 94 Fed. 282. Whether for this purpose it uses a receiver, or its own marshal, or any one of its other officers, the custody is the custody of the court. Such a course makes no change of title, decides no right; it simply preserves the status quo. This is always a matter wholly within the discretion of the court, and it is adopted when the court thinks it for the best interests of all concerned. If there be an abuse of this discretion, it may be reviewed in an appellate court. As this part of the return is directed to the action of the district judge sitting in this court, I have no right to review it, even if I did not concur in his view of the necessity or expediency of the act. But, considering all the circumstances of the case as then presented to him, I can see no possible objection to the course pursued by him. The question now before the court is whether, in the light of the return and the affidavits now in its possession, the custody of the court will continue. That will be discussed hereafter.

2. The next paragraph of the return says that this court is without jurisdiction at this stage of the proceedings, and before the time for answering has expired, to require the defendant to show cause why the prayer of the bill should not be granted, and is without juris-

diction to grant any relief that would be appropriate only on the final adjudication of the case. If by this is meant that the case is not ripe for final hearing, and that defendant is entitled to his day in court on the merits, it is unquestionably true. But the defendant in this part of the return has wholly misconceived the terms of the rule, and has omitted in his quotation some very important language, which modifies and controls the language of the rule. He is directed to show cause why the prayer of the bill be not granted, and (that is to say, in this) a receiver be appointed, and the injunction, etc., entered. This is the whole scope and purpose of the rule confining the return to these two points, and it is strictly in accord with equity practice.

3. The next paragraph of the return objects because no security was required from complainant at the time the restraining order was issued. This, again, is in the nature of a review of the order of the judge granting the restraining order. By section 718, Rev. St. U. S. [U. S. Comp. St. 1901, p. 580], "such an order may be granted with or without security at the discretion of the court or judge."

4. The fourth paragraph of the return raises the question that the trustee, W. D. Melton, is an indispensable party to the bill, even although making him so would oust the jurisdiction. The return goes farther; it avers that he is the only party who can file the bill for the foreclosure of the chattel mortgage set out in the bill. With regard to the character of the complainant and the objection to the filing of the bill by the cestui que trust and not the trustee, the point was made and distinctly ruled by the supreme court in Grant v. Insurance Co., 121 U. S. 105, 7 Sup. Ct. 841, 30 L. Ed. 905. In that case the cestui que trust under trust deeds securing payment of money (a form of mortgage) filed a bill to enforce them in his own name. Objection was taken of the same character as this now set up, and the court overruled the objection, holding the practice proper. These were trust deeds of real estate. With regard to the position that W. D. Melton is an indispensable party, it will be noted that, although Mr. Melton is called a trustee, he is in fact the agent—the alter ego— of the H. B. Claflin Company. He represents no one else. He is responsible to no one else. He has no other interest in his charge. It was the money and the goods of the H. B. Claflin Company which were the consideration of the mortgage. So when the H. B. Claflin Company intervened it was the intervention of a principal to enforce a contract made with its agent. These proceedings were inaugurated by him, and the bill is sustained by his jurat. If any of his rights are involved, he would be precluded from hereafter setting them up. But he is a proper party to the bill, and at this stage the amendment can be made of course. Let the bill be amended, making William D. Melton, trustee, a party defendant.

5. The next objection is that the complainant has a plain, adequate, and complete remedy at law. The jurisdiction of the court of equity over foreclosure of mortgages is so well established that it needs neither authority nor argument to sustain it. Scott v. Neely, 140 U. S. 113, 11 Sup. Ct. 712, 35 L. Ed. 358. Besides this, in order to ascertain the amount due to the complainant in this case, an ac-

count must be taken as to the several payments made from day to day, and this itself is a ground of equity jurisdiction. The equity jurisdiction of the courts of the United States depends on the principles of general equity, and cannot be affected by any local remedy, unless that remedy has been adopted by the courts of the United States. Fitch v. Creighton, 24 How. 159, 16 L. Ed. 596. The defense of an adequate remedy at law means adequate remedy under the common law as it existed in 1789, and not to state statutory remedies. Dodge v. Woolsey, 18 How. 331, 15 L. Ed. 401; Railroad Co. v. Elliott (C. C.) 56 Fed. 773. It is true that complainant had another remedy. It held a mortgage of chattels, and claimed that the condition was broken. If so, it had the right to enter, take possession, and sell the chattels, accounting for any surplus that may remain. But this course was full of difficulty. The amount due was contested. Its establishment was a work of time, necessitating a trial. Very wisely it did not take this speedy and drastic course. It came into this court, where all the facts could be explained, the account be taken, and exact justice be done.

6. The last paragraph of the return goes more into the merits of complainant's demand. It avers that the mortgage was executed to secure moneys advanced to carry out a composition with the creditors of defendant at 50 cents on the dollar, in which composition the complainant had taken part, and to which it had assented, and, further, to secure all subsequent purchases by defendant from complainant; that from the net proceeds of sales, conducted under the supervision of complainant's agents, the money claim of complainant was reduced to $789.13, and that defendant tendered that sum to complainant, which tender was refused, and so the mortgage is satisfied. The transaction between complainant and defendant, when negotiations were first opened and carried out, is told by Messrs. Melton and Nelson, who were specially authorized by defendant to enter upon and carry out this negotiation. The statement of these gentlemen varies entirely from the position now taken by defendant. They say: That the H. B. Claflin Company agreed to advance enough cash to purchase the outstanding claims against the defendant, and did in fact furnish the money. That with this money they approached the creditors individually, and negotiated with each creditor separately. That they made no general offer. They purchased the claims at varying discounts,—some as low as 30 per cent., others as high as 100 per cent.,—in every case taking an assignment of the claim, which was deposited with complainant as collateral. That on their return to Columbia they reported all this to defendant, and that he confirmed and approved their action. That defendant was informed that the H. B. Claflin Company debt was not compromised, but that that was to be paid in full, and to be secured by the mortgage. Defendant, on oath, denies this. It is true that the evidence now before the court is by affidavit,—the most unsatisfactory mode of proving anything. But deciding now upon affidavits, and for the purposes of this motion only, no other conclusion can be reached than that the account given by Messrs. Nelson and Melton is correct, and that the defendant's memory is at fault. The debt due to

complainant when this bill was filed was $9,311.35, to which, as by the terms of the mortgage, attorney's fees must be added.

This brings us to the questions now before the court, shall a temporary receiver be appointed, and shall the injunction be continued? The affirmative to both of these questions depends somewhat upon the solvency of the defendant. His entire property is in the stock of goods. What is its value? Here again a conclusion must be reached upon the uncertain results of affidavits. Both sides produce them and they are irreconcilable. Those for the defendant say that the stock of goods is in excellent condition, and is worth between $25,000 and $30,000. Those for the complainant represent the stock as much broken up, worn, and much of it unsalable, estimating its value at about $9,000. By other affidavits it appears that there are outstanding claims against Furtick, in judgment or in suit or in hands of attorneys for collection, about $2,000. Although it seems that the preponderance of so much of the evidence as can be gathered from these affidavits is in favor of those of the complainant, it would not be satisfactory to rest on this alone. But by the terms of this mortgage complainant was placed in a supervisory position over this stock of goods. It was put actually in possession by Mr. Melton as its agent, appointed a cashier to remain in the store, and supervise the sales to the extent of ascertaining and receiving all the cash, except such as was needed for daily current expenses and a reasonable support of defendant. By operation of law, upon breach of any of the covenants of the mortgage the complainant was entitled to the possession of the stock. Whether there was a breach of the condition of the mortgage will depend upon the amount of the debt due thereunder. Defendant claims that nothing is due except the sum tendered. This must be ascertained and determined when the case is ripe for a hearing. In the meantime both parties assert a right of possession. Under these circumstances, without passing on these conflicting claims, it becomes the duty of the court to hold possession in the interests of both sides. To this end a receiver will be appointed.

Let both sides furnish the court with the names of persons competent to be receiver, and from them a selection will be made. In the meantime matters will remain as they now are, and the injunction will be continued until the further order of this court.