## LYON v. McKEEFREY et al.

(Circuit Court of Appeals, Third Circuit. June 29, 1909.)

### No. 50.

1. BANKS AND BANKING (§ 317*)—INSOLVENCY—DISSOLUTION—STATE STATUTE—EFFECT.

Act Pa. Feb. 11, 1895 (P. L. 4), creating a state banking department, and providing (sections 6, 9) for the winding up of corporations doing a banking business in the state courts at the suit of the Attorney General in case of insolvency or interest of the public, did not impair the jurisdiction of the federal courts to entertain a suit by nonresident creditors of a Pennsylvania trust company doing a banking business and unable to pay its debts as they matured for the liquidation of its assets and an application thereof to its debts through the agency of a receiver.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1222; Dec. Dig. § 317.*]

2. EQUITY (§ 273*)—BILL—AMENDMENT—NEW CAUSE OF ACTION.

Where, after the institution of a suit in a federal court to liquidate the assets of a Pennsylvania trust company and the appointment of a receiver to that end, the Attorney General instituted proceedings in a state court under a state statute and obtained a decree dissolving the corporation from which no appeal was taken, the federal court, after payment of all the corporation's debts, could not properly allow an amendment of the bill and an intervention on the part of stockholders to obtain a distribution of the surplus assets through the federal court's receiver, as the amendment constituted a wholly different and new cause of action.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 561–563; Dec. Dig. § 273.*]

3. BANKS AND BANKING (§ 317*)—TRUST COMPANIES—INSOLVENCY—DISSOLUTION—SURPLUS ASSETS—DISTRIBUTION.

Where, pending suit for the administration of the affairs of a Pennsylvania trust company unable to pay its debts as they matured, the Attorney General, under a state statute, obtained a decree dissolving the corporation and appointing a receiver, which was unappealed from, all purposes for which the federal court's jurisdiction was invoked having been subserved on the payment in full of all of the debts of the corporation, the federal court could not then return a surplus in the hands of its receiver either to the corporation or to its stockholders, but was bound to turn it over to the receiver appointed in the dissolution proceedings in the state court for distribution.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1222; Dec. Dig. § 317.*]

4. CORPORATIONS (§ 609*)—DISSOLUTION—EQUITY.

In the absence of a statute enlarging its powers, a court of equity has no jurisdiction at the suit of a shareholder or other private person to dissolve a corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2421; Dec. Dig. § 609.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

George H. Calvert, for appellant.

Willis F. McCook, for appellees.

Before GRAY, Circuit Judge, and LANNING and YOUNG, District Judges.

GRAY, Circuit Judge. The above-named complainants, citizens of the state of Ohio and partners under the name of McKeefrey & Company, on October 23, 1907, filed a bill in equity in the Circuit Court of the United States for the Western District of Pennsylvania, against the Iron City Trust Company, a Pennsylvania corporation engaged in the general banking business in the city of Pittsburgh, Pa. In their bill the complainants allege that their claims exceed the jurisdictional amount, and that the assets of the defendant consisted of about $175,-000 in cash, and other assets exceeding $14,000,000, and that said assets were largely in excess of its liabilities, but could not be converted into cash in time to meet its liabilities as they matured. They further allege that, upon defendant's failure to meet its obligations, it will, unless its assets are properly protected by an officer of this court, be subject to vexatious and costly litigation, that its assets will be subject to attachment and execution, and at a forced sale would bring much less than their fair and reasonable value, to the great prejudice of the complainants and of all other creditors and of the stockholders of the defendant; and the complainants allege their belief that, unless the court would take defendant's property into its custody and deal with it as a single trust, such property would be sacrificed and the stockholders and creditors and all of the parties in interest would suffer irreparable damage and loss. They therefore pray:

First, for the appointment of certain named receivers, one of whom was president of the company, with the usual powers to take into their possession all the property of the defendant, its business, stocks, rights, assets and effects, of whatsoever nature and wheresoever situate, including its bills and accounts receivable, and all its contracts, rights, choses in action, corporate rights and franchises and its income and profits, and with the usual power to demand, sue for, collect, receive, and take into possession all property belonging to the said corporation, and to institute suits at law or in equity for the recovery of the same, and generally to perform all duties imposed upon them, or required by law.

Second, that the defendant and its officers be commanded to forthwith convey, turn over and deliver to the receivers all the real and personal property, assets and effects that they were empowered to receive.

Third, for other and further relief.

On the same day that the said bill was filed, the defendant, the Iron City Trust Company, filed its answer, admitting to be true all the statements and allegations in the said bill of complaint, and that, although having assets largely in excess of all its liabilities, it was not able to convert the same into cash as rapidly as said liabilities would

171 F.—25

mature, and it avers that on that account it joins in the prayer of the bill for the appointment of receivers, as therein asked for, to the end that all the creditors of respondent may be paid in full, without loss and sacrifice of its assets, so as to preserve the same for its stockholders as well.

On the same day, on the bill and answer filed, and for the reasons stated therein, the court ordered that the persons named by the said complainants be appointed receivers of all and singular the property of the defendant, as set forth in the bill, and with the powers therein prayed for. The receivers thus appointed at once qualified and proceeded upon the execution of their office.

At the time of the filing of said bill and the appointment of said receivers, there was a statute of the state of Pennsylvania, passed February 11, 1895 (P. L. 4), and unrepealed, creating a banking department for the control and regulation of banking companies, trust companies, etc., the sixth and ninth sections of which were as follows:

"Whenever it shall appear from any report of the condition of any corporation made as hereinbefore provided to the Commissioner of Banking, or the said commissioner shall have reason to believe that the capital of any such corporation is reduced, by impairment or otherwise, below the amount required by law or the articles of incorporation, or below the amount certified to the proper authorities as paid in, it shall be the duty of the commissioner and he shall have power to require such corporation. under his hand and seal of office, to make good the deficiency so appearing; and to give effect to such requisition he shall have power to examine, or cause to be examined, any such corporations, books, papers, and affairs to ascertain whether such reduction or impairment of capital has been made good in compliance with his requisition; and if any such corporation shall neglect or refuse, for sixty days after such requisition has been made, to make good the reduction or impairment of capital existing, it shall be the duty of the commissioner to communicate the facts to the Attorney General, whose duty it shall then become to apply to the court of common pleas of the county of Dauphin, or in vacation, to any of the judges thereof, for an order requiring said corporation to show cause why their business should not be closed, and the court or judge, as the case may be, shall thereupon hear the allegations and proofs of the respective parties. If it appears to the satisfaction of the said court or judge that such corporation has neglected or refused to comply with such requisition, and that such capital stock is reduced or impaired, and that such corporation is insolvent, or that the interests of the public so require, the said court or judge shall decree a dissolution of such corporation and a distribution of its effects, or shall make such other orders, from time to time, in the matter as the interests of the parties and the public may require."

"If from any examination of the papers, books and affairs of any corporation, with or without capital, the Commissioner of Banking shall have reason at any time to conclude that such corporation is in an unsound and unsafe condition to do business, or that its business or manner of conducting the same is injurious and contrary to the interest of the public, the Commissioner of Banking shall forthwith communicate the facts to the Attorney General, who shall forthwith make application to the court of common pleas of the county of Dauphin, or to a law judge thereof, for the appointment of a receiver to take charge of such corporation's property and wind up its business. Such receiver shall proceed and wind up the business and affairs of said corporation under and subject to the orders of the court of common pleas aforesaid."

On November 20, 1907, in accordance with the foregoing statutory provision, the Attorney General of the state of Pennsylvania, acting

in pursuance of information submitted to him by the banking commissioner of that state, and alleging that the defendant company was in an unsound and unsafe condition, and was insolvent, began proceedings in the court of common pleas of Dauphin county, for the appointment of a receiver and the winding up of the business of the said company. On December 19, 1907, the Oklahoma Railroad Company, a corporation of the state of Oklahoma, moved to be allowed to file an intervening petition and "cross-bill" in the said suit of McKeefrey & Co. against the Iron City Trust Company, the said petition alleging that, by virtue of a certain contract between said corporation and the defendant company, dated June 17, 1907, it became, between July 1 and August 17, 1907, a creditor of said defendant company to a large amount, and that said defendant company was, at the date of the filing of the original petition for the appointment of receivers, temporarily embarrassed, and was still in such condition, and that it was necessary that said receivers should have been appointed, and was still necessary to have and retain said receivers for the preservation of the assets of said corporation and the protection of the creditors of the same, and praying that it have leave to prove its demand against the estate of the said defendant, and that such orders might be made as were equitable, as between the petitioner and other creditors of the said defendant, for a distribution of its assets; and that orders might be entered in said suit from time to time, requiring all creditors who should desire to participate in the assets of said defendant, in satisfaction of their respective demands, to exhibit the same to the court, or to the receivers, in such reasonable time as the said court might state, etc. On the 10th of December, 1907, the court below ordered that the foregoing petition to intervene in said cause be allowed.

On February 20, 1908, the court of common pleas of Dauphin county, Pa., filed its opinion in the said case of the Commonwealth of Pennsylvania ex rel. M. Hampton Todd, Attorney General, v. The Iron City Trust Company. In this opinon the court states the facts in regard to the bill in equity filed by McKeefrey & Co. against the Iron City Trust Company, reciting the allegations thereof, as the same were in evidence before it, and the answer of the said defendant company, and, after discussion of other evidence pertinent to the issue before it, finds and decrees as follows:

"From the testimony submitted to us, we find that the Iron City Trust Company of Pittsburgh, Pa., the defendant herein, was on October 23, 1907, according to its own admissions and acts, not in a safe and sound condition to do business, and was then, in contemplation of law, insolvent, and that this condition still continues.

"We therefore now order and decree that the Iron City Trust Company of Pittsburgh, Pa., the defendant herein, be and is hereby dissolved and its corporate existence ended, and that Mr. J. Denny Lyon of Pittsburgh, Pa., is hereby appointed receiver of all its property and assets of whatsoever nature and kind, and direct that he institute such proceedings in the Circuit Court of the United States for the Western District of Pennsylvania, as may be proper to procure the revocation of its decree appointing receivers for said defendant corporation, and upon its revocation to take possession of the property and assets of said defendant corporation, close its business and dispose of its property and assets in such manner as the law may require.

Bond with approved security to be given by said receiver in the sum of $500,000."

On March 2, 1908, the appellant, as receiver of the state court, filed his petition in the court below, in which, after reciting the provisions of the said act of the Legislature of Pennsylvania, establishing a banking department, and his appointment as receiver of the Iron City Trust Company by the court of common pleas of Dauphin county, at the instance of the Attorney General of the state of Pennsylvania, in the proceedings above referred to, and the proceedings in the present suit in the Circuit Court of the United States, and the appointment of receivers thereby for the property and business of the said defendant company, and charging collusion, and that the Circuit Court of the United States was without jurisdiction in the premises, by reason of the action of the said state court, and for other reasons, prayed for a rule upon the complainants and upon the said defendant, and upon the receivers, to show cause why the appointment of the said receivers "should not be revoked, vacated and set aside, and why the said receivers should not account to the petitioner for the property and assets of the corporation received by them under and by virtue of their said appointment, and turn over and deliver the same to him, and why the said bill of complaint should not be dismissed." This rule having been granted, several answers were filed by the receivers appointed by the court below and by the Oklahoma Railroad Company, intervening complainants, denying the charges of collusion and any exclusive jurisdiction in the court of common pleas of Dauphin county, and asserting the plenary jurisdiction of the Circuit Court of the United States in the said suit, to deal with and distribute the assets of the said defendant company. The record discloses no action or order of the court below in the matter of the rule thus granted until the order of January 5, 1909.

The receivers, however, proceeded with the administration of the estate, business and assets of the said defendant company, and on the 14th of November, 1908, presented their petition to the court below, setting forth that all creditors of the trust company had been paid in full, and their claims discharged, and that nothing remained to be done in relation to the assets in their hands except their distribution to the stockholders of the trust company, and praying that they be discharged as such receivers and directed to pay and deliver over to the trust company all cash and other assets of said company then remaining in their hands.

On December 26, 1908, Lyon, the receiver appointed by the Dauphin county court, in the form of an answer to the above-stated petition of the receivers appointed by the court below, recites the proceedings in the court of common pleas of Dauphin county, and states that, by reason of the dissolution of the corporation defendant by said court, said corporation has no legal existence, and that the prayer of the receivers that the assets in their hands be turned over to the trust company should be denied, and joins in the prayer of said receivers that they be discharged, but prays that the court below may decree that they shall turn over the assets of said defendant corporation into his hands, as receiver of the state court.

On the same day, December 26, 1908, the said Lyon, as receiver appointed by the state court, presented to the court below his supplemental petition, in which, after reciting the said petition of the 14th of November, 1908, presented by the receivers of the court below, representing that all claims had been discharged and that nothing remained to be done in relation to the assets in their hands except their distribution to the stockholders of the defendant company, and praying that they be discharged as such receivers, and averring that, as shown by the petition of said receivers, the purposes of the bill filed in the court below had been entirely accomplished, and that nothing remained to be done except to distribute the assets of the defendant company, the petitioner prays that the said assets may be turned over into his hands, as receiver of the said defendant company, duly appointed by the court of common pleas of Dauphin county, in accordance with the provisions of the statute of the state of Pennsylvania above recited. To this petition an answer was filed by the receivers appointed by the court below, in which they admit that the decree of the state court dissolving the defendant company was final, and that the appointment of Lyon as receiver was made, as stated in his petition, and that they had executed their trust so far as to pay in full all the indebtedness of the defendant company, leaving in their hands a large amount of assets. They then aver that no one has any interest or right to the said assets so in their hands, other than the stockholders of the defendant company, that said assets are of the face or nominal value of $2,850,000, and of about $2,700,000 in value, if properly and conservatively administered. Then, after a statement of a certain agreement with the Attorney General of the state of Pennsylvania, as to a plan of liquidation by said receivers, from which it is averred the said Attorney General afterwards receded, they proceed as follows:

"Inasmuch as such assets must be liquidated and as the Iron City Trust Company is, under the decree of the court of Dauphin county, dissolved and rendered legally incapable of making contracts and otherwise transacting business, it is necessary that the said assets shall remain in the custody of the receivers appointed by this court for administration and distribution until the trust now in the hands of the court shall be fully performed.

"Your respondents further say that this court is competent, and having taken such assets into its control, it is proper that it proceed to their full administration and that, in accordance with such decree of dissolution of the company, it proceed with the distribution of such assets to the persons entitled thereto, being stockholders.

"Your respondents protest against the removal of such assets out of this court into the common pleas court of Dauphin county, Pa., but pray the court to retain the same, because it is unnecessary, it will involve increased expense and delay in their administration, and such proceeding is unwarranted in law and the circumstances and against equity and the best interests of the owners of the assets, and because no public good or rights of any other person will be subserved by so doing."

On January 2, 1909, 13 petitions were presented to the court by stockholders of the trust company, and an order or decree was thereupon made which, after reciting the names of the petitioners, directed that:

"The Glens Falls Insurance Company of the state of New York is allowed to intervene as party plaintiff in this proceeding pro interesse suo and as representative of a class composed of the above-named petitioners."

On January 5, 1909, the original plaintiffs in the said suit in the court below, members of the firm of McKeefrey & Co., filed their petition to amend and supplement the original bill of complaint, in which, after reciting the facts stated in the original bill of complaint and the appointment of receivers thereunder, and the payment in full of all liabilities, and the fact that assets remained in the hands of said receivers exceeding $2,500,000 belonging to the stockholders of said company, including the petitioners, they proceed as follows:

  "Third. That since the institution of said proceeding and the appointment of receivers therein, the common pleas court of Dauphin county, Pa., upon the petition of M. Hampton Todd, Attorney General of the state of Pennsylvania, decreed that the said Iron City Trust Company be and the same is dissolved and its affairs wound up, which decree unappealed from is now final.

  "Fourth. That by reason of the facts hereinbefore recited and of the said decree of the common pleas court of Dauphin county, Pa., dissolving the defendant corporation, it is necessary that this court shall proceed to determine the ownership of the assets remaining in the hands of the receivers appointed by this court, and to distribute the same to the persons entitled thereto, who are your petitioners and the remaining stockholders of the Iron City Trust Company.

  "Wherefore, your petitioners pray that this petition may be filed as an amendment or supplement to the original petition filed in this proceeding and they pray your honors to make a further order in said proceeding directing the receivers appointed by this court to proceed with the liquidation and distribution of the assets now remaining in the hands of said receivers and to distribute the same to your petitioners and other stockholders of said Iron City Trust Company in proportion to their interests therein."

Whereupon the court made the following order and decree:

  "And now, January 5, 1909, the within petition being presented in open court, and the said defendant, Iron City Trust Company, being present by counsel, and assenting thereto, and J. Dennison Lyon, the receiver appointed by the court of common pleas of Dauphin county, Pa., being represented in court by counsel, it is now ordered, adjudged and decreed that said petition in this proceeding and the said original petition is amended accordingly.

  "And it is now further ordered and decreed that H. S. A. Stewart, one of the receivers heretofore appointed by this court in this proceeding, having by order of this court been relieved from the further performance of this trust and all the powers and duties of the receivers having been committed to the co-receivers, Wm. L. Abbott, the said Wm. L. Abbott, as receiver, is ordered and directed to proceed as expeditiously as is advantageous to the trust with the liquidation of the assets remaining in his hands after the payment of creditors and the distribution of the proceeds derived from such assets to the persons entitled thereto, as hereafter determined and directed by this court."

On the same day, the court made the following order and decree upon the petition of the state receiver filed March 2, 1908, and his supplemental petition filed December 26, 1908:

  "And now, to wit, January 5, 1909, this matter came on to be heard upon the petition and supplemental petition of J. D. Lyon, receiver of the Iron City Trust Company, appointed by the court of common pleas of Dauphin county, Pa., on which petition a rule was granted on W. L. Abbott and H. S. A. Stewart, receivers of the said Trust Company, appointed by this honorable court, to show cause why they should not be discharged from their trust and the assets in their hands turned over to the petitioner, and upon the answers thereto duly filed by W. L. Abbott and H. S. A. Stewart, receivers, upon consideration thereof, the rule to show cause is discharged and the petition and supplemental petition of J. D. Lyon, receiver, as aforesaid, are refused."

On February 6, 1908, Lyon, the receiver appointed by the Dauphin county court, appealed from the decree of January 2, 1909, and from the two decrees of January 5, 1909, and on the same day filed his specifications of error in relation thereto.

Afterwards, on February 13, 1909, the court below, on the petition of W. L. Abbott, as acting receiver of the trust company, made the following order or decree:

"And now, February 13, 1909, the foregoing petition having been presented in open court, it is ordered to be filed, and the receivers of the Iron City Trust Company are now granted leave to withdraw their petition for discharge filed in this proceeding on November 14, 1908. This order is made to take effect as of January 2, 1909."

On the same day, February 13, 1909, Lyon appealed from the last mentioned decree and filed his specification of error relating thereto.

The appellant now contends that the decree of January 2, the two decrees of January 5th, and the decree of February 13th, are erroneous.

No question as to the right of the court below to take jurisdiction of the cause presented to it by the bill and answer filed October 23, 1907, is here raised. In their brief the counsel for the appellant say:

"Our position is that for the purposes of this case we concede the jurisdiction of the circuit court and its receivers to administer this estate up until the time that all creditors had been paid in full and the rights of the complainants in the bill determined, and that the jurisdiction to this extent was not affected nor the proceedings abated by the subsequent dissolution of the corporation by the decree of the state court."

We are thus relieved from the duty of considering whether the Circuit Court's jurisdiction might have been successfully assailed either on the ground that the plaintiffs in the proceeding were mere simple contract creditors or for any other reason. The receivers of the court below have paid in full the claims of all creditors. The only question now to be considered therefore is, to whom shall the large surplus in the hands of the receivers, being assets worth over $2,500,-000, be delivered and paid. Shall it be to the stockholders of the dissolved corporation or to the receiver appointed by the state court?

Since the commencement of this suit, it has been decided by the Supreme Court of the state of Pennsylvania, in the case of Jones & Lincoln Savings & Trust Co., 222 Pa. 325, 71 Atl. 209, affirming the judgment of the court of common pleas of Philadelphia county, and adopting the opinion of Judge Wilson of that court as its own, that the statute of Pennsylvania of 1895, above referred to, does not confer such exclusive jurisdiction upon the court of common pleas of Dauphin county as to supersede and render void all other proceedings regularly and previously instituted in a court of competent jurisdiction, for the settlement of the affairs of a corporation. In the opinion referred to, Judge Wilson says:

"We have not been asked by the plaintiff to do anything which the statute above referred to authorizes. We are not asked to dissolve the corporation. We are not asked to give time for making good an impaired capital or to make a decree based upon proofs of unsafe or improper conduct of business. On the contrary, we are asked only to give a relief which is customary and often afforded, and which has no reference whatever to the remedies of a

public character that the statute affords. So far as we can see, there is nothing in any proper action which we have taken or may hereafter take in the case that will interfere with the commonwealth's effecting all that ought to be done, in any interest which needs to be regarded, without infringing upon the previously acquired jurisdiction of this court."

This is the construction given by the highest court of the state of Pennsylvania to the legislation of that state, with which we are here concerned. The jurisdiction of the court below in this suit is founded upon the diverse citizenship of the parties complainant and defendant in the original bill. Assuming the right of the court below to take jurisdiction of the cause, inasmuch as the appellant concedes that right, the court was exercising a jurisdiction concurrent with the courts of the state of Pennsylvania, and it was administering the law of that state. What a state court could have done, it could do. The decision of the Supreme Court of Pennsylvania, above referred to, sets at rest any doubt as to the jurisdiction of the court below to entertain a suit, unaffected by the proceedings in the Dauphin county court of common pleas, under the provisions of the state statute above referred to.

But the question arises, What was the end of the litigation in the court below? In considering this question, we cannot ignore or be indifferent to these proceedings in the state court instituted by the Attorney General under the authority of the state statute above referred to. We should regard it as a state court would be bound to regard it, if the jurisdiction of such a court had been invoked in this case instead of the concurrent jurisdiction of the court below.

The defendant corporation was a creature of the laws of Pennsylvania, and by those laws the rules governing its existence were prescribed. The measure of control to be exercised over its own corporations was determinable by the law and policy of the state to which they owed their being. By the legislation here in question, the state of Pennsylvania has seen fit to subject such corporations to supervision and administrative control and has ordained the proceedings, partly administrative and partly judicial, by which the life of such corporations may be determined and their affairs wound up and liquidated. The judicial proceeding is not one that may be instituted by private parties, but by the Attorney General of the state, acting on behalf of the commonwealth and in the interest of the public. Such a proceeding is not one of which a United States court can have concurrent jurisdiction. It does not involve a controversy between private parties, whether citizens of the same state or of different states.

The Supreme Court of Pennsylvania has decided, as we have seen, that such proceeding does not exclude the jurisdiction of the courts, state or federal, as regards the ordinary litigation in which the corporation as a party may be involved, growing out of controversies of a private and civil nature. But such litigation clearly does not exempt the corporation involved from the control of the state law or in any wise abrogate or suspend the proceedings instituted by public officers under the authority of the law, for ending the life of such corporation and liquidating its affairs. That the life of the defendant corporation was ended by the decree of the Dauphin county court, is admitted on all

hands, and the further proceedings in the court below were had with the recognition of that fact. But under these proceedings, and in pursuance of their character, as determined by the bill filed by the complainants, as creditors, the receivers appointed by the court below had proceeded to take possession of the assets and administer the same for the purpose of paying the debts of the corporation. This, as we have seen, it is conceded the court below was competent to do, notwithstanding the proceeding subsequently instituted in the state court.

But the court below has clearly exhausted its jurisdiction, so far as the purposes of the original bill are concerned. That bill did not contemplate a dissolution of the corporation and a winding up of its business, indeed, the court was without jurisdiction for that purpose. The most that it could have done was, after the payment of all claims and the conservation of the defendant company's assets, to order the balance thereof remaining in its custody to be returned to the defendant corporation. It is, however, not denied that, by due proceedings had in accordance with the requirements of the state law, the corporation defendant has been dissolved and it is legally dead, and that the receiver appointed by the state court is the legal representative thereof. The position of such receiver presents a not remote analogy to that of an administrator duly appointed by a probate court representing the estate of his intestate. If an intestate die pending a suit by a creditor against him, and there be a surplus remaining after the creditor has been fully satisfied, the court will direct that surplus to be paid, not to the distributees of his estate, but to the administrator duly appointed as his legal representative. Without pressing this analogy too far, it serves to throw some light on the position of the receiver of the state court, the appellant in this case, in the demand made by his supplemental petition, that the balance of the assets remaining in the hands of the court, after the accomplishment of the purposes of the said suit, be turned over to him as the legal representative of the defunct corporation. This petition in no wise assumed or required that the proceedings in the court below should be abrogated or suspended. It was merely an application that the funds in the hands of the court, and about to be distributed, should be paid to him in his representative capacity, and not directly to the stockholders.

We do not think the refusal of the court by its decree of January 5, 1909, to grant the petition of the state receiver, can be justified by the allowance of the amendment to the bill by the other decree of January 5, 1909, and the intervention allowed by the decree of January 2, 1909. These two decrees changed the whole character of the bill, as a creditor's bill, and allowed the original complainants and others to appear in the character of stockholders, asking for a winding up of the corporation and the distribution of its assets. The amendment amounted to a new cause of action. "To insert a wholly different cause is not properly an amendment." Shields v. Barrow, 17 How. 130, 15 L. Ed. 158. But, apart from the propriety of allowing the amendment (a matter largely within the discretion of the court), it is clear that the court could not grant the prayer of the bill, as amended. This court, as well as the court below, is administering the law of Pennsylvania, and

no statute of that state has been brought to our attention by which a court of equity is authorized to dissolve a corporation or wind up is affairs and sequestrate its property. 5 Pom. Eq. Jur. § 119. "It is well settled that, in the absence of a statute enlarging its powers, a court of equity has no jurisdiction at the suit of a shareholder or other private person, to dissolve a corporation." Pearce v. Sutherland (C. C. A. 9th Circuit) 164 Fed. 609; Conklin v. U. S. Shipbuilding Co. (C. C.) 140 Fed. 219. So far as appears, the only statute of Pennsylvania is the one above referred to, providing for the dissolution of the corporation, at the instance of the Attorney General of the state, and the winding up of its affairs by a receiver appointed by the court for that purpose. The Supreme Court of Pennsylvania in the opinion which we have already cited, while deciding that proceedings under this statute were not exclusive of the ordinary suits in which corporations might be involved in state courts other than the court of common pleas of Dauphin county, by no means decided that there was concurrent jurisdiction in any of those courts in a private suit to dissolve or wind up the affairs of the corporation.

There was no doubt convenience to all the parties concerned in the course adopted by the court below in this particular case, in ordering the funds in its hands to be paid directly to the stockholders, and we may admit that both time and expense would be saved thereby, but we cannot, on the score of convenience in this particular case, arbitrarily disregard the demand made by the state through its official representatives. The state of Pennsylvania has seen fit, in the exercise of its plenary control over its own corporations, to provide for their dissolution, and has created an officer through whose hands the assets of a defunct corporation must pass to its stockholders. This legislation controls us, as it would control a state court, and we are compelled to the conclusion that there was error in the decree of the court below denying the petition of the state receiver.

The decrees appealed from must therefore be reversed, and it is so ordered.