## WELCH et al. v. UNION CASUALTY INS. CO.

### In re O'NEIL, Ins. Com'r, et al.

(District Court, E. D. Pennsylvania. February 1, 1917.)

No. 1655.

1. COURTS ⊗═◦493(3)—STATE AND UNITED STATES COURT—RECEIVERS—STOCK-HOLDERS' SUIT—DISSOLUTION.

A bill by nonresident stockholders of an insurance company, which alleges that by reason of mismanagement and misappropriation of the corporation's funds by its former officers it had become financially embarrassed and was pressed by a number of suits by its policy holders and creditors, but was not insolvent, and if its assets and the misappropriated funds could be recovered it could pay its liabilities, including its capital stock, that it transacted business in nine different states, and had assets and liabilities therein, and praying for the appointment of a receiver, seeks relief different from that sought in statutory proceedings in the state court by the Attorney General on information of the insurance commissioner to dissolve the corporation, and the appointment of the federal receiver prior to the decree of dissolution in the state court, but after the institution of the state proceedings, will not be vacated on petition of the state insurance commissioner and Attorney General.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1349–1352; Dec. Dig. ⊗═◦493(3).]

2. COURTS ⊗═◦500—JURISDICTION—STATE LAWS—APPOINTMENT OF RECEIVERS.

Act Pa. April 23, 1909 (P. L. 167), providing that, whenever a receiver of a corporation is appointed by any court of the commonwealth on motion of the Attorney General at the instance of the insurance commissioner, he should forthwith supersede any receiver previously appointed by any decree of any court of the commonwealth, cannot take away the jurisdiction of the federal court under Judicial Code (Act March 3, 1911, c. 231) § 24, 36 Stat. 1091, as amended by Act Dec. 21, 1911, c. 5, 37 Stat. 46 (Comp. St. 1913, § 991), giving federal courts jurisdiction of civil suits at law or in equity between citizens of different states where more than $3,000 is involved, to maintain a receiver in possession of the property of an insurance company at the suit of a nonresident stockholder to preserve its assets and liquidate its debts, notwithstanding a state decree dissolving the corporation at the instance of the commissioner.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1407, 1408; Dec. Dig. ⊗═◦500.]

3. COURTS ⊗═◦500—COMITY—APPOINTMENT OF RECEIVER.

Where proceedings were instituted in a state court to dissolve an insurance company and distribute its assets before a bill was filed in the federal court by nonresident stockholders for the appointment of a receiver, but the federal receiver was appointed before the state court took the res into its possession, and there was no advantage to the creditors or stockholders in the state proceedings, while the necessity of ancillary proceedings to administer the corporation's assets and liabilities in other states gives the federal courts distinct advantages, comity does not require the federal court to vacate the appointment of its receiver and deliver the property to the state insurance commissioner.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1407, 1408; Dec. Dig. ⊗═◦500.]

4. COURTS ⊗═◦500—JURISDICTION—STATE AND FEDERAL COURTS—COLLUSION.

In such a case, the federal court would not retain jurisdiction, if that jurisdiction had been obtained in bad faith or through collusion.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1407, 1408; Dec. Dig. ⊗═◦500.]

⊗═◦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. COURTS ☞500—JURISDICTION—STATE AND FEDERAL COURTS—COLLUSION.
    Mere allegations of collusion and bad faith in the petition of an insurance commissioner to vacate the appointment by a federal court of a receiver for an insurance company which had thereafter been dissolved by the state court, which allegations were denied in the answer and not supported by any proof, do not require the federal court to vacate the appointment on the ground of collusion.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1407, 1408; Dec. Dig. ☞500.]

6. COURTS ☞489(1)—JURISDICTION—CONCURRENT JURISDICTION OF FEDERAL COURTS—JUDICIAL CODE.
    Under the Judicial Code, which omits the provision, found in earlier judicial acts, that the jurisdiction of the federal court shall be concurrent with courts of the several states, the federal court's jurisdiction at the suit of nonresident stockholders to appoint a receiver for an insurance company is not limited to cases where the state court would have similar jurisdiction.

    [Ed. Note.—For other cases, see Courts, Dec. Dig. ☞489(1).]

In Equity. Suit by Homer G. Welch and another against the Union Casualty Insurance Company. On petition of J. Denny O'Neil, Insurance Commissioner, and Francis Shunk Brown, Attorney General, of Pennsylvania, for revocation of appointment of receiver. Petition dismissed.

J. Howard Reber, of Philadelphia, Pa., for plaintiffs.

Joseph L. Kun, Deputy Atty. Gen., and Francis Shunk Brown, Atty. Gen., for the Commonwealth of Pennsylvania.

THOMPSON, District Judge. The plaintiffs, Homer G. Welch, a citizen of New Jersey, and the Consolidated Investment Company, a citizen of Delaware, filed their bill against the Union Casualty Insurance Company, of Philadelphia, a citizen of the state of Pennsylvania. The following facts are set out in the bill:

The plaintiffs are stockholders of the defendant, a corporation organized under the laws of Pennsylvania, authorized to transact a general casualty and liability insurance business, with a capital stock of $100,000, all issued and full paid, and invested in real estate in Philadelphia, the equipment of its offices, and other lawful investments. The company was incorporated in 1909 and continued its business until 1916. During that period it conducted a large business in nine different states of the United States.

In February, 1916, the management of the business was taken over by H. G. Welch, one of the plaintiffs, L. D. Wood, and other individuals, for the purpose of placing the company on a thorough working and business basis, and for that purpose a substantial amount was invested in the purchase of its capital stock. An investigation resulted in the discovery that the company's business had been grossly and fraudulently mismanaged by its former officers and managers, and its books falsified by them, for the purpose of deceiving the public and the various state insurance departments in the jurisdictions in which it was operating, by writing into its books fictitious insurance for the purpose of increasing its apparent assets from premiums

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to be collected, by fictitious cancellation on the books of a large portion of its actual outstanding insurance for the purpose of decreasing its apparent reserve liability, by writing into the books fictitious excess premiums presumably due by reason of pay roll audits under its liability policies, and by suppression and concealment of a large amount of outstanding liability which had accrued under its policies.

Through the improper and fraudulent conduct of the company's business, it had become financially involved, and as soon as the condition was ascertained it stopped the issuing of additional policies, canceled a large portion of the remaining business, and within a short time thereafter reinsured and transferred to another insurance company its outstanding policies, and no new insurance has since then been written. Numerous suits have been instituted against the company and are now pending, and it is embarrassed by threatened proceedings in the different states where it has operated.

It is alleged that, if creditors who have sued and others who have threatened suit are permitted to obtain judgment and issue execution, its assets will be sacrificed, its business ruined, and its creditors and stockholders injured. It is alleged that, although the defendant has no available funds at this time to meet its obligations, it is solvent, and, if a reasonable time is permitted to liquidate its business, its creditors will receive the full amount due them, and its stockholders the full value of their holdings, and the business may be rehabilitated, but if suits are permitted to continue, and the assets disposed of through forced sale or otherwise, they will be sacrificed at but a small part of their real value. In order to preserve and administer the assets, and prevent their being sacrificed and destroyed, the bill prays for the appointment of a receiver and for general relief.

The bill was filed December 18, 1916. On the same day an answer was filed by the defendant company, admitting the allegations in the bill, and joining in the prayer for the appointment of a receiver. Thereupon, on the same day, a decree was entered appointing Samuel W. Cooper, Esq., temporary receiver, with leave to the plaintiffs to move for the appointment of a permanent receiver on January 2, 1917, upon 10 days' notice to all known creditors and parties in interest.

On December 20, 1916, J. Denny O'Neil, insurance commissioner, and Francis Shunk Brown, Attorney General, of Pennsylvania, presented a petition to vacate the appointment of the receiver, representing that on November 15, 1916, the Attorney General, at the relation of the insurance commissioner, had filed in the court of common pleas of Dauphin county his suggestion against the Union Casualty Insurance Company, giving the court to understand that the company was insolvent and that its further transaction of business would be hazardous to its policy holders, to its creditors, and to the public. Thereupon the Dauphin county court granted a rule upon the company to show cause on November 29, 1916, why the insurance commissioner should not take possession of its property, and why the court should not order the liquidation of the business of the company and the dissolution of the corporation, and enjoining the company,

its officers, agents, and employés, from transacting any business of the company or disposing of any if its property.

On November 29, 1916, the company filed an answer to the suggestion, setting forth that, since its incorporation, it had transacted a casualty insurance business in Philadelphia up to May 1, 1916, since which time it has written no new insurance in this state or elsewhere. It denied that it was insolvent, and that a further transaction of business would be hazardous to its policy holders, its creditors, and to the public, and denied any necessity for the appointment of a receiver. On November 27, 1916, the company appeared, by its counsel, in the Dauphin county court, and in open court agreed that December 19th, at 10 o'clock a. m. should be fixed as the time for a hearing.

On December 19th (the day after the entry of the decree appointing the receiver in this case), the Dauphin county court, having taken jurisdiction on November 15, 1916, proceeded to a hearing, and, after full hearing, entered, on the same day, a formal decree, in which it finds that the company is insolvent, and that its further transaction of business will be hazardous to its policy holders, its creditors, and the public, and ordered, adjudged, and decreed that the company—

"be and the same is hereby dissolved, and its corporate existence ended, and the liquidation of the business of said corporation is hereby ordered, said liquidation to be made by and under the direction of the insurance commissioner of the commonwealth and in accordance with the provisions of the act of June 1, 1911 (P. L. 599); and it is hereby further ordered that the said dissolution of said corporation shall take effect upon the entry of certified copy of this order in the office of the prothonotary of Philadelphia county."

The petition alleges that a copy of the decree of the Dauphin county court has been filed as provided by law in the prothonotary's office of Philadelphia county. The proceedings in the Dauphin county court were had and the decree entered under the provisions of the act of assembly of Pennsylvania of June 1, 1911 (P. L. 599), providing for dissolution of insurance companies and the liquidation of their assets, under the supervision of the insurance commissioner of Pennsylvania.

The petition represents that the commonwealth of Pennsylvania has · established a complete system for the regulation and control of insurance companies created by it and operating under its laws, and for the liquidation of such companies, and, under the act of 1911, has vested exclusive jurisdiction for that purpose in the court of common pleas of Dauphin county, or the court of any county in which the principal office of such corporation is located. The act of April 23, 1909 (P. L. 167), provides that whenever a receiver of a corporation is appointed by any court of this commonwealth on motion of the Attorney General at the instance of the insurance commissioner, such receiver shall forthwith supersede any receiver previously appointed by the decree of any court of this commonwealth.

The petition represents that the District Court of the United States has no power or authority to decree the dissolution of a corporation created by the commonwealth of Pennsylvania, nor the right or authority to supersede and take away the control vested in the insurance commissioner of Pennsylvania, and the court of common pleas of Dauphin county, or the court where the principal office of an insur-

ance corporation is located, nor the right to wind up the affairs of a Pennsylvania corporation so created and subject to the supervision of the insurance commissioner; that, under the comity existing between the courts of the state and federal courts, this court should regard the proceedings instituted in the court of common pleas of Dauphin county in this case as a state court would be bound to regard them under the laws of the state of Pennsylvania; that the decree of the Dauphin county court, made in this case on November 29, 1916, enjoined the Union Casualty Insurance Company, its officers, agents, and employés, from transacting any of the business of the company or disposing of any of its property; and that the application made in this court in the present suit at the instance of the officers of the company, Linden D. Wood and Homer G. Welch, its principal stockholders, violated both the letter and spirit of the said injunction.

The petition further represents that the application for a receiver made to this court was made in bad faith and for the sole purpose of preventing the Dauphin county court from ordering the dissolution of said corporation and directing the insurance commissioner to wind up its affairs under the laws of Pennsylvania, and for the purpose of securing friendly receivers to be appointed, so that the methods of Linden D. Wood and Homer G. Welch, principal owners of said corporation, in conducting the affairs thereof, would not be investigated or exposed. The petition represents that the order appointing Samuel W. Cooper receiver of said corporation was improvidently made, and prays that the appointment be revoked, and the receiver directed to turn over all of the books and assets of the corporation to J. Denny O'Neil, insurance commissioner, appointed to liquidate said corporation by the Dauphin county court.

Upon the said petition, this court granted a rule to show cause, returnable January 2, 1917. To this petition and rule, Homer G. Welch and Thomas Wood, who is secretary of the Consolidated Investment Company, filed an answer denying that Welch is one of the principal owners of the Union Casualty Insurance Company, and averring that, prior to the hearing in the Dauphin county court on December 19, 1916, the Attorney General and judges of said court were given notice by service of certified copies of the appointment and qualification of Samuel W. Cooper as receiver; that, notwithstanding said notice, the Attorney General proceeded with the hearing and the court entered its decree. The answer denied exclusive jurisdiction of the Dauphin county court, or of the court of any county in which the principal office of the corporation is located, and denied that the jurisdiction conferred by the act of June 1, 1911, in any manner can affect the jurisdiction of this court.

It is pointed out that the suit in equity in this case is not a proceeding for the dissolution of the company, and therefore the act of April 23, 1909, has no application to the facts of this case, refers only to proceedings pending in different courts of the commonwealth, and has no application to a proceeding under the federal jurisdiction. It is claimed that this court has jurisdiction under the bill to appoint a receiver to administer the affairs of the corporation for the purposes

set forth in the bill in equity, and with the powers set forth in the decree in this case.

It is denied that this court should, under the comity existing between state and federal courts, regard the proceedings instituted in the Dauphin county court, and it is claimed that, under that comity, the Dauphin county court, having notice of the appointment of the receiver by this court, should have regarded the proceedings instituted in this court, and should have refused to proceed with a hearing and decree. It is denied that the application for the appointment of a receiver in this case violated the injunction of the Dauphin county court, and it is averred that the bill for the appointment of a receiver in this court was instituted by them as stockholders of the defendant corporation for the sole and exclusive purpose of having the assets and property of the defendant company preserved for the best interest of all of its creditors and stockholders. It is denied that the bill in equity for the appointment of receiver was filed in bad faith and for the purpose of preventing the court of common pleas of Dauphin county from ordering dissolution of the corporation and directing the insurance commissioner to wind up its affairs under the insurance laws of Pennsylvania. It is denied that the bill was filed for the purpose of securing friendly receivers, so that the methods of conducting its affairs should not be investigated or exposed.

It is averred that the sole purpose in filing the bill was to have the affairs of the company administered by the federal courts. thereby removing from its administration any local or factional differences, and so that there might be appointed an absolutely independent and impartial receiver to take charge of the assets, to preserve them, to conduct such investigation as the circumstances might warrant, and it is averred that, if the receiver faithfully performs the duties of his office, by conserving the assets and realizing their full value, and by the institution of legal proceedings against parties who have defrauded the stockholders, or improperly managed the business, he will realize a sum sufficient to pay all claimants of the corporation in full, to hold its stock intact for its full par value, that there will be remaining in the hands of said receiver a substantial sum in addition thereto, and that the corporation, if permitted to do so by the insurance laws of Pennsylvania, can continue as a solvent corporation and properly perform all of its functions.

It is claimed that the affairs of the company can be administered far more successfully, economically, and expeditiously by the federal courts of the United States than by the insurance department of Pennsylvania, that the defendant company's business has been conducted in nine different states in the Union, and it has liabilities and assets in all of said states. It is alleged that there is deposited with the insurance department of the state of Ohio the sum of $50,000; that the receiver appointed by this court has been appointed ancillary receiver by the federal court in Ohio, and has qualified and is now performing his duties under that appointment; that he has assumed the duties of his office, and has proceeded with the performance of the

same, and, if he were ousted from office, it would be to the great detriment of the creditors and stockholders.

The answer attacks the constitutionality of the act of June 1, 1911 (P. L. 599), upon several grounds set forth at length. The answer alleges, upon information and belief, that exceptions to the decree of the Dauphin county court of December 19, 1916, have been filed in that court, and that the decree of dissolution and liquidation is being vigorously contested by the company.

An answer was also filed by the receiver, setting forth that upon his appointment and qualification on December 18, 1916, he took possession of the assets of the company; that on the day of his appointment he was informed of the institution of the dissolution proceedings, and that a hearing would take place on the following day, December 19th, and that, prior to the hearing, he gave notice to the Attorney General and the judges of the Dauphin county court, by service of a certified copy of his appointment and qualification; that the business of the company is most complicated and intricate; that it has been in business for a period of about nine years, during which time it has written thousands of policies of casualty insurance of different classes; that he gave notice of the hearing upon the application to make the receivership permanent to approximately 3,000 creditors and possible claimants, located in nine different states; that the debts of the company consist mostly of balances due by former policy holders and brokers throughout the United States; that he has notified a large number of said debtors, endeavoring to collect the amounts due by adjustment or otherwise; that a number of attorneys throughout the country have accounts in their hands for collection, and, in certain instances, have collected the same and are deducting from the moneys in their hands certain sums due them for services; that among the assets there was deposited with the insurance department of the state of Ohio $50,000; that on December 20th he was appointed ancillary receiver by the United States District Court for the Southern District of Ohio, Eastern Division, and has qualified as such, and that proceedings are pending in Ohio to attach the fund referred to; that there are about 1,000 unadjusted claims and suits filed against the company, many of which are first formal notices, while many others are formal proofs as to the actual damages for which it is claimed the company is liable, and the receiver is of the opinion that many of them can be adjusted on very satisfactory terms; that there are numbers of suits pending against the company in Pennsylvania and elsewhere, which need immediate attention. It is further averred that at this time there are approximately 263 suits pending against policy holders in which counsel has been retained to defend the same; that these cases are on the trial list, and are to be tried at an early date; that until February, 1916, the company was operated primarily through its officers and other parties named, and that apparently during said period its affairs were conducted in an illegal and improper manner.

The receiver sets out in detail alleged illegal acts of those in prior control of its business and their misapplication of its funds. He fur-

ther charges falsification of the books of the company as alleged in the bill. ·He alleges that, by reason of the improper conduct of the business and the fraudulent appropriation of funds, he, as receiver, is preparing to institute legal proceedings against the parties alleged to be responsible to recover the amounts which he believes have been fraudulently taken from the company; that from the facts so far developed, if the estate is properly and carefully administered, the assets are sufficient to pay all creditors and stockholders in full; that the company is solvent, and that there is every reason to believe that its affairs may be placed in such condition as to enable the defendant company to again operate its business with the permission of the insurance department.

[1] The bill under which the receiver was appointed is a stockholder's bill, and the parties, the rights, and the remedies in this suit differ essentially from those in the proceeding brought in the Dauphin county court at the suggestion of the Attorney General. The bill sets out that, by reason of fraudulent acts of former officers of the company and the misappropriation of its assets, it has become financially embarrassed, is pressed by numerous suits at the instance of policy holders and creditors, and that, while financially embarrassed, it is not insolvent, but that its assets are sufficient to pay its debts; that the appointment of a receiver is necessary to protect the interests of the creditors and stockholders of the corporation, to recover its assets, to recover from its former officials and others moneys ·misappropriated, and to pay its creditors; that its business is transacted in nine different states in the Union; that it has assets and,liabilities in other states than ,Pennsylvania, and the plaintiffs ask relief which is not similar to that asked for in the statutory proceeding had in the Dauphin county court.

As stated by Judge Gray in the case of Lyon v. McKeefrey et al., 171 Fed. 384, 96 C. C. A. 340, referring to a proceeding under the Pennsylvania Banking Act (Act Feb. 11, 1895 [P. L. 4]) similar to the statutory proceeding had in the Dauphin county court:

"The judicial proceeding is not one that may be instituted by private parties, but by the Attorney General of the state, acting on behalf of the commonwealth and in the interest of the public. Such a proceeding is not one of which a United States court can have concurrent jurisdiction. It does not involve a controversy between private parties, whether citizens of the same state or of different states."

The distinction was pointed out by Judge Wilson in his opinion adopted as the opinion.of the Supreme Court in the case of Jones v. Lincoln Savings & Trust Co., 222 Pa. 325, 71 Atl. 209, in the following language:

"All of the specific reasons urged upon our attention by the Attorney General are wrapped up in the contention that, when the court in Dauphin county made its decree appointing a receiver, the bars were raised against any further proceeding by this court under the bill filed here. We are not able to agree with that view of the question, not because we think it to be of any importance who shall receive the fees or commissions that may accrue to a receiver, but because we fail to find in the statute any provision which gives to the proceedings brought in the name of the commonwealth any such exclusive force as is claimed for them. We have not been asked by the plaintiff

to do anything which the statute referred to above authorizes. We are not asked to dissolve the corporation. We are not asked to give time for making good an impaired capital, or to make a, decree based upon proofs of unsafe or improper conduct of business. On the contrary, we are asked only to give a relief which is customary, and often afforded, and which has no reference whatever to the remedies of a public character that the statute affords. So far as we can see, there is nothing in any proper action which we have taken, or may hereafter take, in the case, that will interfere with the commonwealth's effecting all that ought to be done, in any interest which needs to be guarded, without impinging upon the previously acquired jurisdiction of this court."

See, also, Treat v. Penna. Mutual Life Ins. Co., 199 Pa. 326, 49 Atl. 84, 85 Am. St. Rep. 788.

The Attorney General, however, contends that the case is ruled to the contrary by the decision of Judge Gray, speaking for the Circuit Court of Appeals for this circuit in the case of Lyon v. McKeefrey, above referred to. In that case Judge Gray followed the ruling in Jones v. Lincoln Savings & Trust Co., and held that the act of 1895, creating a state banking department and providing for the winding up of corporations doing a banking business at the suit of the Attorney General, in case of insolvency or interest of the public, did not impair the jurisdiction of the federal courts to entertain a suit by nonresident creditors of a Pennsylvania corporation doing a banking business and unable to pay its debts as they matured, for the liquidation of its assets and an application thereof to its debts through the agency of a receiver, but that where, after the appointment of a receiver by the federal court, the Attorney General, under the state statute, obtained a final decree dissolving the corporation and appointing a receiver, when purposes for which the federal court's jurisdiction was invoked had been subserved by the payment in full of all of the debts of the corporation, the federal court would not then order the payment of a surplus in the hands of its receiver either to the corporation or to its stockholders, but would order it turned over to the receiver appointed in the dissolution proceedings in the state court for distribution.

[2] It is urged, however, that under the Pennsylvania act of April 23, 1909 (P. L. 167), apparently passed to overcome the effect of the decision in Jones v. Lincoln Savings & Trust Co., supra, which provides that the receiver of a corporation appointed by a state court at the instance of an individual shall be superseded by a receiver appointed at the instance of the Attorney General, this court is bound by comity to stand in the position in which it is contended a state court would stand because of the provisions of that act, and to vacate the appointment of its receiver. Even if the act of 1909 would oust the jurisdiction of a state court of common pleas in a suit like the present, because the statutory dissolution proceedings were pending and a receiver had been appointed under such proceeding, and, if the act had been in effect, it would have ousted the jurisdiction in the case of Jones v. Lincoln Savings & Trust Co., it does not follow that, where a federal court has taken jurisdiction in a suit where jurisdiction is conferred by act of Congress between citizens of different states, its jurisdiction is ousted by the provisions of the state Legislature.

The suit brought in this court comes within the provisions of section 24 of the Judicial Code, as amended by the act of December 21, 1911, providing that the District Courts shall have original jurisdiction of all suits of a civil nature, at common law or in equity, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and is between citizens of different states. The rights which citizens possess under the Constitution and acts of Congress to bring their suits against citizens of other states in the federal courts place a duty upon the court, where such jurisdiction clearly appears, of retaining jurisdiction unless, upon some ground of public policy, jurisdiction should be relinquished, or unless the right of jurisdiction in the state court clearly excludes the right of this court to retain jurisdiction.

"In Hyde v. Stone, 20 How. 170, 175 [15 L. Ed. 874], it is said: 'But this court has repeatedly decided that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power. In many cases state laws form a rule of decision for the courts of the United States, and the forms of proceeding in these courts have been assimilated to those of the states, either by legislative enactment or by their own rules. But the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. Suydam v. Broadnax, 14 Pet. 67 [10 L. Ed. 357]; Union Bank v. Jolly's Administrators [Vaiden] 18 How. 503 [15 L. Ed. 472].' This principle has been steadily adhered to by this court." Chicot County v. Sherwood, 148 U. S. 534, 13 Sup. Ct. 695, 37 L. Ed. 546.

That jurisdiction, as has often been decided, is vested as a part of the judicial power of the United States in its courts by the Constitution and acts of Congress in execution thereof. Without the assent of Congress that jurisdiction cannot be impaired or diminished by the statutes of the several states regulating the practice of their own courts. McConihay v. Wright, 121 U. S. 201, 7 Sup. Ct. 940, 30 L. Ed. 932. The federal courts have jurisdiction to the same extent in all the states, and state legislation cannot affect it. Boyle v. Zacharie, 6 Pet. 648, 8 L. Ed. 532; Smith v. Railroad Co., 99 U. S. 398, 25 L. Ed. 437.

[3] The right asserted by the Attorney General to have the receiver appointed in a suit where solvency of the corporation is alleged and otherwise properly cognizable under the equity powers of this court, forthwith dismissed, and the property, which has come into his possession as an officer of this court, turned over to the receiver of the Dauphin county court, is claimed to be based upon the ground of comity. Before the bill was filed in this case, the Dauphin county court had not yet taken the res into its possession or control. The extent to which the proceeding had gone consisted only in the filing of the suggestion of the Attorney General, the granting of the

rule to show cause, and a restraining order upon the corporation to prevent its disposition of its property. There is no peculiar advantage to the stockholders or to the creditors pointed out through having the property turned over for administration by the state receiver, and, in view of the business of the corporation having been transacted in several states, the ancillary receivership of the federal court in the state of Ohio, and the probable necessity for ancillary proceedings in other federal districts, where assets are situate, the case seems to be one which peculiarly comes within the advantages of federal jurisdiction. Where the property, as in the present case, is first in the possession of this court, the rule of comity does not require it to relinquish its jurisdiction. Empire Trust Co. v. Brooks, 232 Fed. 641; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Heidritter v. Elizabeth Oil Cloth Co., 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729; In re Johnson, 167 U. S. 120, 17 Sup. Ct. 735, 42 L. Ed. 103; Powers v. Bluegrass B. & L. Association (C. C.) 86 Fed. 705.

[4] A state court would not, under the decision in the case of Jones v. Lincoln Savings & Trust Co., vacate the appointment upon the ground of comity, but because of the act of April 23, 1909, and this court, as has been decided, is not bound by the state statute. But this court would not retain jurisdiction, where on other grounds the jurisdiction of the Dauphin county court should be recognized as having first attached, if the jurisdiction of this court had been obtained in bad faith or through collusion.

[5] There are allegations in the petition to vacate charging that the application for a receiver in this court was made in bad faith and for the sole purpose of preventing the common pleas of Dauphin county from ordering the dissolution of the corporation and directing the insurance commissioner to wind up its affairs, and for the purpose of securing friendly receivers to be appointed, so that the methods of Wood and Welch, the principal owners, should not be investigated or exposed. The allegation of bad faith is denied in the answer of the plaintiffs, and no proof was offered to overcome the effect of that denial, and there is nothing upon the record, except the bare allegation, to show collusion or bad faith.

There is, therefore, no support to the allegation that the proceeding was brought in bad faith. There is nothing in the record of the proceedings in the Dauphin county court, attached to the Attorney General's petition, in any way connecting the plaintiffs in the present action with the proceedings in the Dauphin county court; but the court is asked to assume, because the proceeding was pending in that court, that the bill was filed in this court through collusion or bad faith. There must be something more than a mere statement to that effect to induce the court to act upon such charge. The language of Mr. Justice Peckham in the case of Metropolitan Railway Receivership, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403, is peculiarly pertinent to the present case:

"In this case we can find no evidence of collusion, and the Circuit Court found there was none. It does appear that the parties to the suit desired that the administration of the railway affairs should be taken in hand by the Cir-

cuit Court of the United States, and to that end, when the suit was brought, the defendant admitted the averments in the bill, and united in the request for the appointment of receivers. This fact is stated by the Circuit Judge; but there is no claim made that the averments in the bill were untrue, or that the debts named in the bill as owing to the complainants did not in fact exist; nor is there any question made as to the citizenship of the complainants, and there is not the slightest evidence of any fraud practiced for the purpose of thereby creating a case to give jurisdiction to the federal court. That the parties preferred to take the subject-matter of the litigation into the federal courts, instead of proceeding in one of the courts of the state, is not wrongful. So long as no improper act was done by which the jurisdiction of the federal court attached, the motive for bringing the suit there is unimportant. Dickerman v. Northern Trust Co., 176 U. S. 181, 190 [20 Sup. Ct. 311, 44 L. Ed. 423]; South Dakota v. North Carolina, 192 U. S. 286, 311 [24 Sup. Ct. 269, 48 L. Ed. 448]; Blair v. City of Chicago, 201 U. S. 400, 448 [26 Sup. Ct. 427, 50 L. Ed. 801]; Smithers v. Smith, 204 U. S. 632, 644 [27 Sup. Ct. 297, 51 L. Ed. 656]."

The alleged purpose of obtaining the appointment of friendly receivers is denied in the answer. The allegation was made after the appointment of the receiver, and, standing unsustained by proof, constitutes an unwarranted imputation, not only upon the plaintiffs' good faith, but the good faith and, by innuendo, upon the professional integrity of a member of the bar of the highest standing. It is to be regretted that such an allegation upon the public records of the court should be made without justification. In fact, no suggestion of Mr. Cooper's name was made to the court by any one, and he was not appointed until the court was satisfied that he was not interested in the case or the parties in any manner. It may be concluded, then, that the pending suit was properly brought in this court, that this court has jurisdiction, and that no fact has been brought to the attention of the court to establish collusion or bad faith or any improper purpose in invoking the jurisdiction of this court.

[6] In Judge Gray's opinion in the case of Lyon v. McKeefrey he used certain language which it is insisted by the Attorney General means that the federal court would have had no jurisdiction to entertain the bill in the present case unless the state courts had had such jurisdiction. The language referred to is as follows·:

"Assuming the right of the court below to take jurisdiction of the cause, inasmuch as the appellant concedes that right, the court was exercising a jurisdiction concurrent with the courts of the state of Pennsylvania, and it was administering the law of that state. What a state court could have done, it could do. The decision of the Supreme Court of Pennsylvania (Jones v. Lincoln Savings & Trust Co.), above referred to, sets at rest any doubt as to the jurisdiction of the court below to entertain a suit, unaffected by the proceedings in the Dauphin county court of common pleas, under the provisions of the state statute above referred to."

When that case was decided the federal courts had jurisdiction under the act of March 3, 1875, as amended 1887–1888, "concurrent with the courts of the several states." The clause in quotations is omitted from the Judicial Code of March 3, 1911, and if there is any question that the federal courts have jurisdiction under the general equity powers conferred by the Constitution and the acts of Congress, that question does not arise in this case, because of any limitation upon their powers by that clause in effect at that time, but no longer in effect.

If, in this case, the jurisdiction of the federal court were dependent upon the jurisdiction of the state courts in equity, the language, "what a state court could have done, it could do," would apply; but what Judge Gray seems to have meant was, not that the federal court is limited in its powers in equity by the jurisdiction of the state court, but that, wherever an equitable right is created by the statutes of the state, the federal court can administer that right in equity where there is jurisdiction of the parties and of the subject-matter. Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; Ex parte McNeil, 13 Wall. 236, 20 L. Ed. 624; Smith v. Railroad Co., 99 U. S. 398, 25 L. Ed. 437.

It cannot be assumed that Judge Gray meant to confine the jurisdiction of the federal court over suits like the present one to cases in which the equitable powers of the courts are derived from the powers of the state courts. Fitch v. Creighton, 65 U. S. (24 How.) 159, 16 L. Ed. 596; Hotel Co. v. Wade, 97 U. S. 13, 24 L. Ed. 917. Whenever, in the course of the present suit, the rights of the defendant corporation against its debtors in the several states of the Union in which it has done business have been finally disposed of by the receiver, its assets collected and administered, and its debts paid, if there be any surplus remaining, and the purposes of the present suit have been fully subserved, and if then it is shown that the decree of the Dauphin county court is final, it may be the proper time to invoke the doctrine of Lyon v. McKeefrey, and order the receiver of this court to pay the surplus to the statutory receiver appointed by the Dauphin county court. When the decree of the court below in that case, ordering distribution to the corporation and its stockholders by the receiver of the federal court, was entered, the functions of the receiver in the suit pending in that court had been fully performed.

In view of the conclusions reached, it is unnecessary to pass upon the constitutional questions raised. The purposes for which the bill was filed and the receiver appointed in this court not having been accomplished, the petition of the insurance commissioner and the Attorney General is dismissed, the rule to vacate the appointment of receiver is discharged, and the appointment will be made permanent.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes