O'NEIL, Insurance Com'r, et al. v. WELCH et al.

(Circuit Court of Appeals, Third Circuit.   July 23, 1917.   Rehearing Denied
October 4, 1917.)

No. 2227.

1. COURTS ⬤259—FEDERAL COURTS—JURISDICTION.
   The federal court in the exercise of its general equity jurisdiction has
   power to appoint a receiver on a stockholder's bill, determine a corpora-
   tion's solvency, and distribute its assets, and no state statute can impair
   or destroy that power.

2. COURTS ⬤489(1)—FEDERAL COURTS—JURISDICTION.
   Under Act Pa. June 1, 1911 (P. L. 599), declaring that whenever any
   domestic insurance company is insolvent, or is found after examination
   in such condition that its further transaction of business will be hazard-
   ous to its policy holders, or to its creditors or to the public, the Insurance
   Commissioner may through the Attorney General apply for an order di-
   recting such corporation to show cause why the Insurance Commissioner
   should not take possession of its property, conduct its business, and dis-
   tribute its assets, the state courts have special jurisdiction to determine
   the solvency of an insurance company and distribute its assets, which ju-
   risdiction is concurrent with that of the federal courts, to appoint a re-
   ceiver on a stockholder's bill, determine such corporation's solvency, and
   distribute its assets.

3. COURTS ⬤193(1)—JURISDICTION—CONCURRENT JURISDICTION.
   Where two courts have concurrent jurisdiction in the sense that each
   has the same jurisdiction, such jurisdiction should not be concurrently in-
   voked and exercised, and that court which first obtains jurisdiction has
   the right to proceed to a final determination without the interference of
   the other.

4. COURTS ⬤497—JURISDICTION—TEST.
   Control over the property in controversy is the test of jurisdiction.

5. COURTS ⬤500—JURISDICTION—CONCURRENT JURISDICTION.
   Under Act Pa. June 1, 1911 (P. L. 599), providing that whenever any
   domestic insurance company is insolvent or is found to be in such condi-
   tion that its further transaction of business will be hazardous to its policy
   holders, or its creditors, or the public, the Insurance Commissioner may
   through the Attorney General apply for an order directing such corpora-
   tion to show cause why the insurance commissioner should not take pos-
   session of its property, conduct its business, and distribute its assets.   The
   Insurance Commissioner by the Attorney General filed a suggestion in the
   state court and obtained a rule directing the insurance company to show
   cause why the commissioner should not take possession of its property and
   why the court should not order liquidation of its business and dissolution
   of the company.   Prior to the hearing on the rule to show cause, but after
   it had been granted, a nonresident stockholder of the corporation filed a
   bill in the federal court praying dissolution of the corporation and distri-
   bution of its assets, and a receiver was appointed by the federal court.
   The receiver immediately took possession of corporate property in his
   reach.   *Held* that, though the state court had not possession of the corpo-
   ration's property, yet, as such remedy was open to it and was necessary
   to a determination of the proceeding therein instituted, the state court,
   though it had with the federal court concurrent jurisdiction, first obtain-
   ed jurisdiction, which could not be ousted by the appointment of a re-
   ceiver by the federal court; the rule that actual seizure of property is the
   test of jurisdiction not being applicable in view of the nature of the pro-
   ceeding in the state court.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. Constitutional Law ⬦⇒129—Impairment of Obligation of Contracts—
Charter Rights.
    Notwithstanding Const. U. S. art. 1, § 10, inhibiting the states from en-
acting laws impairing the ·obligation of contracts, and Const. Pa. art. 1, §
7, an insurance company has no charter right in remedies prescribed for
its·dissolution, and the state may modify such remedies without violating
the constitutional provisions.

Appeal from the District Court of the United States for the Eastern
District of Pennsylvania; J. Whitaker Thompson, Judge.

Suit by Homer G. Welch and another against the Union Casualty
Insurance Company, in which Samuel W. Cooper was appointed re-
ceiver. Petition of J. Denny O'Neil, Insurance Commissioner, and
Francis Shunk Brown, Attorney General of the Commonwealth of
Pennsylvania, was dismissed (238 Fed. 968), and petitioners appeal.
Decree reversed.

Joseph L. Kun and William M. Hargest, Deputy Attys. Gen., and
Francis Shunk Brown, Atty. Gen., for appellants.

Percival H. Granger and J. Howard Reber, both of Philadelphia,
Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit
Judges.

WOOLLEY, Circuit Judge. This is an appeal from a decree of
the District Court dismissing a petition of the Insurance Commissioner
and Attorney General of the Commonwealth of Pennsylvania, ask-
ing the court to revoke its appointment of a receiver. The question
is one of jurisdiction growing out of a conflict between State and Fed-
eral courts. As the facts are fully stated in the opinion of the Dis-
trict Court ([D. C.] 238 Fed. 968), only a brief outline is necessary
to the present discussion.

The Union Casualty Insurance Company was a corporation of the
Commonwealth of Pennsylvania. Under insurance laws in force at
the time of its incorporation (Act of April 4, 1873, P. L. 20; Act of
May 1, 1876, P. L. 53), the Insurance Commissioner of the Common-
wealth had general supervision of insurance companies,. with power
to inquire concerning their solvency and management and to proceed
against them when insolvent or fraudulently conducted. By the Act
of June 1, 1911, the insurance laws of the Commonwealth of Pennsyl-
vania were in part repealed and with new provisions were reenacted
in a comprehensive system of State control, ·covering the examination,
regulation, rehabilitation, liquidation and dissolution of insurance com-
panies incorporated and doing business under the laws of that Com-
monwealth (Acts of June 1, 1911, P. L. 567, 581, 598, 599, 602, 604,
607). The Act of June 1, 1911 (P. L. 599) provides, among other
things, a method of proceeding against insolvent and fraudulently con-
ducted insurance companies, which, so far as it affects the question in
issue, is as follows:

"That whenever any domestic insurance company, association, society, or
order, including all corporations, associations, societies, and orders which are
subject to examination by the Insurance Commissioner, or which are doing

⬦⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

or attempting to do, or representing that they are doing, the business of insurance in this Commonwealth; * * * (a) is insolvent; * * * or (e) is found, after an examination, to be in such condition that its further transaction of business would be hazardous to its policy-holders, or to its creditors, or to the *public* * * * the Insurance Commissioner may, through the Attorney General, apply to the Court of Common Pleas of Dauphin County, or to the Court of any county in which the principal office of such corporation is located, for an order directing such corporation to show cause why the Insurance Commissioner should not take possession of its property and conduct its business, and for such other relief as the nature of the case and the interests of its policyholders, creditors, stockholders, or the *public* may require.

"Sec. 2. On such application, or at any time thereafter, such court may, in its discretion, issue an injunction restraining such corporation from the transaction of its business or disposition of its property until the further order of the court. On the return of such order to show cause, and after a full hearing, the court shall either deny the application or direct the Insurance Commissioner forthwith to take possession of the property and conduct the business of such corporation, and retain such possession and conduct such business until, on the application either of the Commissioner, through the Attorney General, or of such corporation, it shall, after a like hearing, appear to the court that the ground for such order directing the Insurance Commissioner to take possession has been removed, and that the corporation can properly resume possession of its property and the conduct of its business.

"Sec. 3. If, on a like application and order to show cause, and after a full hearing, the court shall order the liquidation of the business of such corporation, such liquidation shall be made by and under the direction of the Insurance Commissioner, who shall be vested by operation of law with title to all of the property, contracts, and rights of action of such corporation as of the date of the order so directing him to liquidate. * * * *"

On November 15, 1916, the Insurance Commissioner of the Commonwealth of Pennsylvania, by the Attorney General, filed a suggestion in the Court of Common Pleas of Dauphin County (hereinafter called the State court), in conformity with the provisions of the quoted Act, and obtained a rule directed to The Union Casualty Insurance Company (hereinafter called the Insurance Company) "to show cause why the Insurance Commissioner should not take possession of its property, and to show cause why the Court should not order the liquidation of the business of the said company and the dissolution of the said corporation."

Pursuant to the provision of the Act, that *"On such application * * * such court may * * * issue an injunction restraining such corporation from the transaction of its business or disposition of its property,"* that court, at the time it received the suggestion and granted the rule, ordered, that:

"Pending the further order of this court, the said Union Casualty Insurance Company of Philadelphia, Pa., its officers, agents and employees, *are hereby enjoined and restrained from* transacting any of the business of said company or *disposing of any of its property."*

The rule was made returnable November 29, 1916. On that day the Insurance Company appeared and filed its answer to the suggestion, with a prayer that the rule be continued to December 19, 1916. The continuance was granted. On December 18, 1916, the day before the return day of the rule, Homer G. Welch, a citizen of New Jersey, and Consolidated Investment Company, a corporation of Delaware, filed a stockholders' bill in the District Court of the United States for the

Eastern District of Pennsylvania (hereinafter called the Federal court), alleging solvency of the Insurance Company and praying the appointment of a receiver for the conservation of its property pending the adjustment of its difficulties. Although the Insurance Company had already appeared and answered in the proceeding in the State court, it voluntarily appeared in the Federal court and filed an answer concurrently with the bill, admitting its allegations; whereupon the Federal court appointed a receiver. The receiver immediately took possession of all assets of the Insurance Company within his reach, and served certified copies of his appointment upon the Attorney General of the Commonwealth of Pennsylvania and upon the judges of the State court.

The State court, on December 19, 1906, the return day of the rule to show cause, acting apparently in ignorance of the proceeding in the Federal court of the day before, proceeded with its hearing and entered an order directing the dissolution of the Insurance Company and the liquidation of its assets by the Insurance Commissioner in the manner prescribed by law, the decree being expressly based on the finding that the Insurance Company was insolvent and that its further transaction of business would be hazardous to its policyholders, its creditors *and the public*. On the next day, December 20, 1916, the Insurance Commissioner and the Attorney General, being then informed of the action of the Federal court, hastened to the Federal court and presented a petition praying that it revoke its appointment of a receiver. The Federal court granted a rule to show cause why its order of appointment should not be vacated, and upon its return, dismissed the petition and discharged the rule, in accordance with an opinion filed ([D. C.] 238 Fed. 968). This is an appeal from that decision.

The denial of the petition by the Federal court was based upon its understanding that its appointment of a receiver and his appropriation of the res prior to the decree of dissolution but *subsequently* to the institution of proceedings in the State court vested jurisdiction in the Federal court so fully and completely that neither law nor comity required its surrender to the State court. Judging from the consideration given by the learned District Judge to the general subject of conflict of jurisdiction between State and Federal courts, we infer that the broad subject, with its many phases, was as elaborately discussed before him as it was before us, raising many questions which we think are not in issue.

As we view the case, it does not present questions:—whether a Federal court has power to decree the dissolution of a corporation of the Commonwealth of Pennsylvania in a proceeding in which its jurisdiction first attached; whether a Federal court has authority to supersede and take away the general control over insurance companies vested by State statute in the Insurance Commissioner, before the Insurance Commissioner has in the exercise of his control begun proceedings in a State court; whether a Federal court has authority to supersede and annul action by a State court after proceedings there have been begun and jurisdiction has been acquired; or, generally, whether a state law can limit or impair the jurisdiction of a Federal court conferred by Act

of Congress, or whether a Federal court, having first acquired jurisdiction, should in comity relinquish it to a State court in deference to state statutes. All these questions were in some measure considered in the decision and argued on appeal. As we view it, the case presents the single question: Which court first acquired jurisdiction? No other question is in issue and no other will be decided.

[1, 2] The starting point in this controversy, therefore, is the jurisdiction of the two courts. It cannot be doubted that the Federal court, in the exercise of its general equity jurisdiction, has power to appoint a receiver on a stockholder's bill, determine a corporation's solvency and distribute its assets, and that no State statute can impair or destroy that power. It is equally clear that the State court has power, in the exercise of its special jurisdiction, to determine on the Attorney General's suggestion the solvency of an insurance corporation, deliver its property to an officer with the function of a receiver, and distribute its assets; and that there is no Federal statute which impairs or destroys that power. Therefore, in considering the one question of priority of jurisdiction, we assume that the Federal and State courts named have concurrent jurisdiction in the appointment of receivers and in administering the affairs of insolvent corporations, though invoked and proceeded with in different ways.

[3] While the two courts have concurrent jurisdiction in the sense that each has the same jurisdiction, it is the policy of the law that the jurisdiction of both shall not be concurrently invoked and exercised; hence it is a well settled rule that as between two courts having concurrent jurisdiction of the subject of an action, the court which first obtains jurisdiction has the right to proceed to its final determination without interference from the other. Pitt v. Rodgers, 104 Fed. 387, 389, 43 C. C. A. 600. In our mixed system of State and Federal jurisprudence, such a rule is found not only desirable but necessary. It was therefore early held (Taylor v. Tainter, 16 Wall. 366, 21 L. Ed. 287), that:

"Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases. It is indeed a principle of universal jurisprudence that where jurisdiction has attached to a person or thing, it is (unless there is some provision to the contrary) exclusive in effect until it has wrought its function."

When, therefore, we find which court first obtained jurisdiction of this controversy, we have answered the question as to which should retain it.

[4, 5] Control over the property in controversy is the test of jurisdiction, Riggs v. Johnson County, 6 Wall. 166, 18 L. Ed. 768; In re Johnson, 167 U. S. 120, 17 Sup. Ct. 735, 42 L. Ed. 103. Upon this the parties agree. But at this point the parties and the authorities separate, following two lines, one to the effect that priority of judicial seizure, without regard to the previous pendency of a suit in another court, is the test of jurisdiction over the res, Powers v. Blue Grass B. & L. Asso. (C. C.) 86 Fed. 705; Knott v. Evening Post Co. (C. C.) 124 Fed. 342; 11 Cyc. 1010—Cases; and the other to the effect, that jurisdic-

tion is acquired by the beginning of the proceeding and not by actual seizure of property in all· cases where dominion and control of the property are essential to' the full accomplishment of the action, Vo-winckel v. Clark & Sons (C. C.) 162 Fed. 991; McKinney v. Langdon, 209 Fed. 300, 305; Mound City Co. v. Castleman, 187 Fed. 921, 110 C. C. A. 55; Texas v. Palmer, 158 Fed. 705, 85 C. C. A. 603, 22 L. R. A. (N. S.) 316; McDowell v. McCormick, 121 Fed. 61, 57 C. C. A. 401; Adams v. Mercantile Trust Co., 66 Fed. 617, 15 C. C. A. 1; Hirsch v. Independent Steel Co. (C. C.) 196 Fed. 104. An analysis of the cases discloses, that both these contentions are correct according to the subject matter to which they are applied and the thing intended to be done. The subject matter and object of an action therefore have as important a bearing upon the determination of the question whether jurisdiction is acquired by the beginning of the suit or by the appointment of a receiver and his seizure of property, as have the acts of the court in reducing property to its control.

If the action in the State court had been brought as in the Federal court on stockholders' or creditors' bill, the jurisdiction invoked in both courts being in behalf of parties with like rights over the same subject matter, the race for jurisdiction would have fallen within and would have been determined by the line of authorities which hold that the court which first obtained control of the property through seizure by its appointed receiver, first acquires jurisdiction without regard to which first commenced proceedings. Cases supra. When, however, from the character of the parties and the very nature of the two proceedings, different rights are asserted and different remedies are pursued, though the essential issues and subject matter are the same, the question when jurisdiction is acquired is likely to be determined by considerations other than the court's actual possession of the property in controversy. These considerations have received attention by courts in similar cases where an action in a State court was begun first, and a receiver was first appointed by a Federal court. In McKinney v. Landon, 209 Fed. 300, 126 C. C. A. 226, the court said:

"It is a maxim of the law that a court having possession of property cannot be deprived thereof until its jurisdiction is surrendered or exhausted, and that no other court has a right to interfere. It is a principle of right and of law which leaves nothing to the discretion of another court and may not be varied to suit the convenience of litigants. Merritt v. American Steel Barge Co., 24 C. C. A. 530, 79 Fed. 228. It is essential to the dignity and authority of every judicial tribunal and is especially valuable for the prevention of unseemly conflicts between federal courts and the courts of the states. As between them it is reciprocally operative—mutually protective and prohibitive. The most difficulty arises in determining when possession of property has been taken, when jurisdiction has attached to the exclusion or postponement of that of other courts. It is settled, however, that actual seizure or possession is not essential, but that jurisdiction may be acquired by acts which, according to established procedure, stand for dominion and in effect subject the property to judicial control. It may be by the mere commencement of an action the object, or one of the objects, of which is to control, affect, or direct its disposition. See Mound City Co. v. Castleman, 110 C. C. A. 55, 187 Fed. 921, and the cases cited. The principle often applies 'where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control

of the property to be affected.' Farmers' Loan & Trust Co. v. Railroad, 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667. The mere fact that an exigency calling for a receiver may arise does not make the jurisdiction of the court in that respect relate to the beginning of the action (Shields v. Coleman, 157 U. S. 168, 178, 15 Sup. Ct. 570, 39 L. Ed. 660), as perhaps where it is an ordinary aid to execution on a final judgment and dependent upon conditions or circumstances that may or may not occur. But where the declared purpose of an action in whole or in part is directed to specific property, and the full accomplishment thereof may require judicial dominion and control, jurisdiction of the property attaches at the beginning of the action. And it is so if dominion and control are essential to the action, though not yet exercised."

Applying these observations to the case in hand, it is to be noted that the action in the Federal court was brought under the general jurisdiction of that court and was of a character indicated by the stockholders' bill upon which it was instituted. The action in the State court was brought against a creature of the State by a State official to enforce the State's rights in a court vested by State statute with special jurisdiction to try and determine those rights. We must therefore inquire with some care into the subject matter of the State action before we can determine when the State court acquired jurisdiction and whether it was deprived of it by the subsequent action of another court.

The Commonwealth of Pennsylvania has prescribed by law a comprehensive system of rules governing the incorporation and operation of insurance companies within its borders. It has undertaken, as a State function, their examination, regulation, and, when necessary, their dissolution. In assuming this function the State has defined rights conferred upon insurance companies and rights reserved to itself, imposed duties and prescribed remedies. In conferring upon insurance companies incorporated under its laws the right to solicit business from the public, it imposed upon them the duty to be solvent and to conduct their business honestly, and reserved to itself the right to inquire both as to their solvency and business conduct, and when necessary to stay their business and end their existence.

The state engaged in this undertaking primarily for the protection of the public. Being for the public, its action is a governmental function. When in its exercise it becomes necessary to protect the public from insolvent or improperly conducted insurance companies, the state pursues a remedy prescribed by the same law that conferred the corporation's rights and defined the state's duties. Given briefly, the Insurance Commissioner, acting through the Attorney General, files in a State court a suggestion of the corporation's insolvency or unlawful conduct. In this way the State acts and in this way the State begins suit. Upon the State's suggestion the court starts a judicial inquiry by directing to the Insurance Company a rule to show cause why the Insurance Commissioner should not take possession of its property, *and at the same time* (that is at the very beginning of the suit) the court, if it wishes, lays its hand upon the company's property, and by a restraining order holds it within its control pending the inquiry.

The jurisdiction of the State court thus invoked is a special jurisdiction conferred by statute as a part of the State's policy of insurance regulation and control. It is not conferred for the protection of cor-

porations' policyholders and creditors alone, but for the protection of the public as well. This clearly appears by the terms of the act; it again appears in the court's decree. In prosecuting an insurance company the State is acting for the public, and the public is in turn interested in the proceeding; though not nominally present as a party, it is nevertheless present in the person of the Attorney General.

The statutory proceeding includes several prescribed steps, namely, the filing of the suggestion, the rule to show cause (and if needed, an accompanying order restraining the disposition of the corporation's property), hearing on the rule, a decree dismissing the proceeding or directing the Insurance Commissioner to take over the property and conduct the business of the corporation and proceed with the liquidation and distribution of its assets. In this order, actual or physical possession of the property of the corporation is not acquired until the rule has been returned and made absolute. Yet it is absolutely essential to the declared purpose of the action that the property of the corporation, its subject matter, shall not be withdrawn from the jurisdiction of the court before its inquiry is completed. To that end the statute affords, as against the corporation and its officers, the remedy of injunction, to be invoked, if desired, at the inception of the proceeding. As against stockholders, the law is equally effective. The law under which an insurance company is incorporated subjects it to State supervision and administrative control, and ordains the proceeding by which its life may be determined and its affairs wound up and liquidated. The rights of such a corporation are therefore subordinate to the rights of the State, and the rights of stockholders are no greater than those of the corporation. When, therefore, the statutory proceeding has been begun in a State court and by its commencement jurisdiction has been acquired over the corporation, neither the corporation nor its stockholders, nor its creditors can divest the court of its jurisdiction or deprive the State of its public function by subsequently invoking the aid of a Federal court to remove the corporation's property beyond the reach of the State court and thereby withdraw from the State court the subject matter of the action there pending. If this were not so, every action instituted by the state government against an insurance company might be interrupted and defeated by a non-resident stockholder filing in a Federal court a bill accompanied with the answer of an acquiescing corporation, after action has been begun in the State court and before in its orderly progress the property of the corporation has been physically seized. Thus the policy of the State would be thwarted and its administration overthrown; the State's creature would be more powerful than the State itself. We are satisfied that no such thing was contemplated either in Federal or State polity.

In disposing of this question it is important to note that we are not concerned with a situation where a Federal court on a stockholders' bill appointed a receiver, and, acquiring control of the corporation's property, acquired jurisdiction before the State moved in the State court, Lyon v. McKeefrey, 171 Fed. 384, 96 C. C. A. 340; we are dealing with a situation where the State moved first, where the State court first acquired jurisdiction over the corporation by its appearance

and answer, and exercised a species of control over its property by a restraining order long before a bill was filed in the Federal court and long before a receiver was appointed by that court, and where in one day more it would have completed its control over the corporation's property by actual seizure but for the appointment of a receiver by the Federal court, made possible only by the willing answer of the corporation filed concurrently with the bill.

The act of the State in bringing suit was the exercise of a governmental power; the acts of the State court in pursuing a procedure established to insure the full accomplishment of that power stand for dominion over the entire subject matter in litigation, and subject the property of the corporation to its jurisdiction for the full purpose of the judicial proceeding, which includes its possession, liquidation and distribution. We are therefore of opinion that the State court acquired jurisdiction not only of the corporation but of its property upon the inception of the proceeding, and, being first to acquire jurisdiction, is entitled to retain it until the State has wrought its function and until the jurisdiction invoked has been exhausted.

[5] The appellees attack the decree of the State court, entered in pursuance of the Act of June 1, 1911, P. L. 599, upon the ground that in enforcing the remedies of that Act against the defendant corporation created prior thereto, charter rights are impaired and burdens are imposed in violation of article 1, section 10 of the Constitution of the United States, and article 1, section 7 of the Constitution of Pennsylvania. In disposing of this contention, it is sufficient to say, that the particular rights asserted as charter rights acquired by the corporation under laws in force at the date of its creation, were rights in the remedies thereby prescribed to be employed against it; and the particular burdens complained of as being imposed by laws subsequently enacted, are the new and different remedies to which the corporation was subjected. The point of the complaint therefore is as to remedies lost and imposed. In these we find no charter rights assailed. Nor do we find burdens imposed, other than such as the Commonwealth may constitutionally impose and to which the corporation must submit.

The decree below is reversed.

